S13A1295. COWART v. THE STATE.
S13A1296. ADAMS v. THE STATE.
(751 SE2d 399)

NAHMIAS, Justice.

Alex Cowart and John A. Adams appeal their convictions for felony murder and other crimes related to the armed robbery of Sean Giroir, Michael Levi, John Silcox, and Miles Antle and the subsequent shootings that killed Giroir and injured Levi. For the reasons discussed below, we affirm Cowart's convictions but remand his case for resentencing because he was improperly sentenced for two felony murder convictions based on the death of a single victim. And we reverse Adams's convictions due to the erroneous and harmful admission of evidence bolstering the testimony of the key witness against him.[1]

---

[1] The crimes occurred on October 28, 2010. On March 9, 2011, Cowart and Adams were indicted for the malice murder of Sean Giroir; three counts of felony murder of Giroir, predicated on aggravated assault, armed robbery, and possession of a firearm by a convicted felon; the aggravated assaults of Giroir and Michael Levi, predicated on shooting them with a deadly weapon; the aggravated assaults of John Silcox and Miles Antle, predicated on assaulting them with a firearm by displaying it in a threatening manner; burglary predicated on entering a house to commit aggravated assault; armed robbery; three counts of possession of a firearm during the commission of a crime; and possession of a firearm by a convicted felon. The counts based on the possession of a firearm by a convicted felon were later nolle prossed. Cowart and Adams were tried together beginning on October 17, 2011. At trial, on the counts that alleged that Cowart and Adams committed aggravated assaults against Silcox and Antle, the court charged the jury on the lesser included offense of pointing a gun at another. On October 28, the jury returned its verdicts.

Cowart was found not guilty of malice murder but guilty of the remaining charges, including pointing a gun at Silcox and Antle as lesser offenses of those aggravated assault charges. On October 31, 2011, Cowart was sentenced to life in prison on both remaining felony

1. Viewed in the light most favorable to the verdict, the evidence presented at trial by victims of the crimes and investigating officers showed the following. Late in the afternoon of October 28, 2010, Giroir, Levi, Silcox, and Antle were inside their house in Savannah when someone knocked at the door. Giroir opened it and was confronted by Cowart and co-indictee Daniel Izzo, who pointed guns at him and forced their way inside. The two intruders demanded money and drugs and told the victims to empty their pockets. Giroir handed over his cell phone and a bag containing unspecified amounts of marijuana and money.

Cowart and Izzo then ran out of the house to a Honda SUV that was waiting around the corner with a driver inside. Giroir chased after them, and Antle followed. Cowart got into the SUV, but Izzo lost a shoe as he fled, and as he reached the vehicle, Giroir caught him and a fight began. Antle arrived moments later and pushed Giroir out of the way, because Antle was bigger and felt he could handle Izzo better. When Antle grabbed Izzo from behind, Cowart got out of the SUV and approached Antle and Giroir with his gun drawn. Antle used Izzo as a shield, while Giroir put his hands in the air and said "don't shoot." At that point, Levi rounded the corner and neared the SUV. Cowart shot Levi in the arm and hip, turned and shot Giroir twice in the chest, and then turned the gun back on Antle and told him to let Izzo go. Antle continued to use Izzo as a shield, but when Cowart lowered his gun and got back inside the SUV, Antle let Izzo go, and Izzo jumped in the SUV. As the vehicle drove away with Cowart and Izzo

murder counts, 20 concurrent years in prison for the aggravated assaults of Giroir and Levi and the burglary, 12 concurrent months on the two convictions for pointing a gun at another, and five consecutive years for two of the firearm convictions. The trial court merged the verdicts for armed robbery and the firearm offense based on the armed robbery into the felony murder conviction based on armed robbery. As explained in Division 2 below, the court also should have sentenced Cowart on only one of the two felony murder counts, so the case must be remanded for resentencing.

The jury found Adams not guilty of malice murder, felony murder based on the aggravated assault of Giroir, the aggravated assaults of Giroir and Levi, and the firearm offense predicated on the murder. Adams was found guilty of the remaining counts, including pointing a gun at Silcox and Antle as lesser offenses of those aggravated assault charges. On October 31, 2011, the trial court sentenced Adams to life in prison for the felony murder conviction predicated on armed robbery, 12 concurrent months in prison on the two convictions for pointing a gun at another, and five consecutive years for the firearm conviction predicated on aggravated assault. The trial court merged the verdicts for armed robbery and the firearm offense based on the armed robbery into the felony murder conviction. The court vacated Adams's burglary conviction, ruling that it was mutually exclusive with the jury's not-guilty verdicts on the aggravated assault counts.

Cowart and Adams each filed a timely motion for new trial that was later amended. The trial court denied the motions on February 5, 2013, and Cowart and Adams filed timely notices of appeal. Their cases were docketed in this Court for the April 2013 term. Cowart's case was submitted for decision on the briefs, and Adams's case was orally argued on October 7, 2013.

inside, Antle got its license plate number. Levi survived, but Giroir died from his two gunshot wounds.

About 6:00 a.m. the next morning, Izzo, Cowart, and Adams were arrested in a hotel room in Atlanta, which Izzo had registered for using a false name, as Izzo attempted to flush marijuana down the toilet. The Honda SUV, which was owned by Adams's girlfriend's mother, was parked outside. The police recovered a shoe from the room that matched the one that fell off Izzo's foot as he fled the victims' house. When arrested, Cowart had $535 in cash; Izzo had $353; and Adams had $161. At trial, Antle and Levi identified Cowart as one of the robbers, and Antle identified him as the shooter.

Before trial, Izzo entered a plea agreement with the State; he was allowed to plead guilty to voluntary manslaughter, armed robbery, burglary, and aggravated assault in exchange for his testimony against Cowart and Adams. According only to Izzo, Adams had suggested to Cowart and Izzo that they rob some people Adams knew who sold marijuana from a house in Savannah. Adams figured that because the drug dealers were breaking the law, they would not report the robbery. The plan was to convince the dealers to turn over money and drugs by threatening them with guns that Cowart would provide. Cowart and Izzo agreed to commit the armed robbery, and Adams drove them to the house in the Honda SUV. When they arrived, Cowart and Izzo went to the door with their guns drawn while Adams stayed in the car because the dealers knew him. Izzo recounted the armed robbery and shootings much as the surviving victims did. He identified himself and Cowart as the two men who invaded the house, Cowart as the shooter, and Adams as the getaway driver. Izzo added that, after the shootings, he, Cowart, and Adams went to Adams's mother's house, changed clothes, and drove from Savannah to Atlanta in the SUV, where Izzo rented the hotel room and they divided the money they had stolen.

### Case No. S13A1295 (Cowart v. The State)

2. The evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Cowart guilty beyond a reasonable doubt of the crimes for which it returned guilty verdicts. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[2] In particular, the jury, which was instructed on defense of self and others, was entitled to reject Cowart's claim that he shot Giroir

---

[2] As discussed in Division 4 (a) below, Izzo's lengthy proffer statement was improperly admitted into evidence. The evidence of Cowart's guilt was sufficient even without considering

and Levi in defense of himself and Izzo. See *Sifuentes v. State*, 293 Ga. 441, 443 (746 SE2d 127) (2013) ("While [the defendant] maintains he acted in defense of himself and his brother, '(i)t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)). See also OCGA § 16-3-21 (b) (2) ("A person is not justified in using force [in defense of self and others if he is] . . . fleeing after the commission or attempted commission of a felony . . . .").

However, we must vacate Cowart's sentences and remand his case for resentencing because the trial court erroneously sentenced him on two felony murder convictions involving the same victim. Because both murder counts involved the same victim, one of the guilty verdicts was vacated by operation of law. See *McClellan v. State*, 274 Ga. 819, 820 (561 SE2d 82) (2002). Under our precedent, the decision as to which of the two felony murder verdicts should be deemed vacated — a decision that may affect which other verdicts merge and thus what other sentences may be imposed — is left to the discretion of the trial court on remand. See id. at 820-821 & n. 2.

3. Cowart contends that he is entitled to a new trial because the prosecutor violated OCGA § 17-8-76 during her closing argument.[3] Near the end of the State's rebuttal closing argument, the prosecutor suggested that Cowart could be paroled if the jury convicted him.[4] After the prosecutor completed her argument about a minute later,

---

Izzo's proffer, although as explained in footnote 12 below, in evaluating the legal sufficiency of the evidence to support a conviction, we may consider evidence that was erroneously admitted at trial.

[3] OCGA § 17-8-76 reads:

> (a) No attorney at law in a criminal case shall argue to or in the presence of the jury that a defendant, if convicted, may not be required to suffer the full penalty imposed by the court or jury because pardon, parole, or clemency of any nature may be granted by the Governor, the State Board of Pardons and Paroles, or other proper authority vested with the right to grant clemency.
>
> (b) If counsel for either side in a criminal case argues to or in the presence of the jury as provided in subsection (a) of this Code section, opposing counsel shall have the right immediately to request the court to declare a mistrial, in which case it shall be mandatory upon the court to declare a mistrial. Failure to declare a mistrial shall constitute reversible error.

[4] In cross-examining Izzo and in closing argument, Cowart's trial counsel referenced the murder charges and life sentence that Izzo had faced before taking his plea deal to testify for the State, as well as the 30-year mandatory minimum prison term Izzo faced before he would be eligible for parole. This was done to undermine Izzo's credibility, but it also revealed to the jury that the possibility of parole existed for a conviction on the same charges on which Cowart was being tried. Adams's counsel also referred to parole for such charges in his closing argument. In her rebuttal closing, the prosecutor responded by saying, "When [defense counsel] first started their closing you would have thought life meant, you know, never coming out and now you know that's not what it means. A life sentence in legal terms means . . . doesn't mean that. Doesn't mean that the person . . . they'll be paroled." She then pointed out that the one person who got a life sentence and cannot be paroled was the murder victim.

the jury left the courtroom. Cowart then objected to the prosecutor's argument and asked the court to either bring the jury back for the prosecutor to correct her statement that "life doesn't mean life" or grant a mistrial.[5] The court summarily denied those requests.

Cowart's objection and motion for mistrial, made after the prosecutor's closing argument ended, were not timely, and he therefore failed to preserve this issue for appeal. See *Butler v. State*, 273 Ga. 380, 383-384 (541 SE2d 653) (2001) (holding that the defendant's objection was untimely when he waited until the end of the prosecutor's closing argument to raise it); *Mullins v. Thompson*, 274 Ga. 366, 367 (553 SE2d 154) (2001) ("[A] motion [for mistrial] must be made *at the time* the improper argument is uttered." (emphasis in original)).

Recognizing that we could hold that he waived his complaint about the prosecutor's mention of parole, Cowart alternatively argues that his trial counsel provided ineffective assistance by failing to make a timely objection. This claim is also procedurally barred, however, because Cowart did not raise it in his motion for new trial and did not obtain a ruling on it by the trial court. See *Bailey v. State*, 264 Ga. 300, 300 (443 SE2d 836) (1994). Cowart's new appellate counsel briefly questioned his trial counsel on this issue at the hearing on the motion for new trial; she then discussed the issue in a supplemental brief filed after the hearing, in which she argued that Cowart could amend his motion for new trial at any time before the trial court ruled on it, citing *Horne v. State*, 231 Ga. App. 864 (501 SE2d 47) (1998), and OCGA § 5-5-40 (b), which says that "[t]he motion [for new trial] may be amended any time on or before the ruling thereon." But Cowart never actually amended his motion to add such a claim.[6]

---

[5] Adams did not object or join Cowart's objection and motion.

[6] Cowart's trial counsel filed the original motion for new trial on November 9, 2011. Cowart was appointed new counsel on January 3, 2012, and that lawyer filed an amended motion that did not enumerate as error that trial counsel was ineffective for failing to timely object to the prosecutor's closing argument. After the motion for new trial hearing and the filing of the supplemental brief, but before the trial court ruled on the motion, Cowart's current counsel, who is from the same public defender office as his first appellate counsel, was appointed to represent him. Because Cowart's first appellate counsel did not raise the ineffective assistance claim regarding his trial counsel, Cowart is barred from raising it directly. See *Williams v. Moody*, 287 Ga. 665, 666 (697 SE2d 199) (2010) ("In order to avoid a waiver of a claim of ineffective assistance against trial counsel, the claim must be raised at the earliest practicable moment, and that moment is 'before appeal if the opportunity to do so is available.' The pre-appeal opportunity is 'available' when the convicted defendant is no longer represented by the attorney who represented him at trial." (citation omitted)). And even if Cowart wanted to argue that his first appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel, he would not be entitled to a remand and must instead raise the claim in a habeas corpus proceeding. See *Wilson v. State*, 286 Ga. 141, 145 (686 SE2d 104) (2009) ("[The appellant]

A brief normally does not amend a motion for new trial to add new grounds. See *Horne*, 231 Ga. App. at 866. In *Horne*, the Court of Appeals accepted the defendant's brief as an amendment of his new trial motion because "the trial court in its discretion had implicitly allowed the motion to be amended" by treating an enumeration of error raised only in the brief as if it had been raised in the motion. Id. In this case, by contrast, the trial court did not address Cowart's ineffective assistance claim in ruling on his motion for new trial, indicating that the court did not treat his supplemental brief as an amendment to the motion and meaning that there is no ruling on the issue for this Court to review.

4. Cowart finally argues that he is entitled to a new trial because the trial court erred in admitting the proffer statement given by Izzo. After being arrested with Cowart and Adams on October 29, 2010, Izzo was interviewed by the police. Among other things, Izzo said that at least one of the men who chased him and Cowart after they left the victims' house had a knife. Izzo also told the police that Adams did not know about the plan to rob the victims — Adams believed they were going to the house to buy marijuana — and that Adams did not participate in the armed robbery. Izzo later began plea negotiations with the State, and on February 22, 2011, he provided a lengthy proffer of what he would say if called as a State's witness; the proffer statement was recorded and transcribed. In the proffer, Izzo said that Adams was aware of and participated in the armed robbery and indeed that it was Adams's idea. Izzo also said that he did not get a clear look at Giroir and Antle as he and Cowart were being chased and did not see if they had knives. The State then offered Izzo a plea bargain, and on April 27, 2011, he pled guilty only to voluntary manslaughter, armed robbery, burglary, and aggravated assault. The State told Izzo that it would recommend a sentence of 15 years to serve on the voluntary manslaughter charge and 12 years to serve on the armed robbery charge, but his sentencing was postponed until after he testified at the trial of Cowart and Adams.

At trial, Izzo's testimony on direct examination essentially tracked his proffer statement. On cross-examination, both Cowart and Adams attacked Izzo's credibility by highlighting his plea bargain and his motive to fabricate his testimony to curry favor with the State, asking, for example, "The purpose of all this [testimony] is to get Daniel Izzo less time, isn't it? . . . Whatever it takes to get it, right?"

---

cannot resuscitate the procedurally barred claims of ineffective assistance of trial counsel by bootstrapping them to a claim of ineffectiveness of appellate counsel.").

They also introduced Izzo's post-arrest statement, which contradicted much of his trial testimony, as a prior inconsistent statement. See former OCGA § 24-9-83 ("A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case.").[7] The defense lawyers referred to the fact that Izzo had made a proffer before entering his plea deal, but the specific content of the proffer statement was not discussed.

When the cross-examination of Izzo ended, the State sought to introduce his proffer statement as part of its re-direct examination. Cowart and Adams objected on the grounds that the proffer was not an admissible prior consistent statement and would be improper bolstering of Izzo's testimony. The trial court overruled the objections and allowed a redacted transcript of the proffer statement to be read into evidence.[8] The proffer statement spans 46 pages of the trial transcript; Izzo's direct examination, exclusive of testimony laying the foundation to admit exhibits, was only about 24 pages.

(a) The trial court's admission of Izzo's proffer statement was error. Since 1985, Georgia law has allowed certain prior consistent statements of a witness to be admitted as substantive evidence. See *Cuzzort v. State*, 254 Ga. 745, 745 (334 SE2d 661) (1985). In 1998, this Court clarified that a witness's prior consistent statement is "admissible only where (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination." *Woodard v. State*, 269 Ga. 317, 320 (496 SE2d 896) (1998), overruled on other grounds by *Bunn v. State*, 291 Ga. 183 (728 SE2d 569) (2012).

On appeal, the district attorney cites this standard and argues that the veracity of Izzo's trial testimony was placed in issue during his cross-examination. But the district attorney overlooks what this Court said in *Woodard*, and has repeated many times since, about *how* a witness's veracity must be challenged to allow the introduction of his prior consistent statement:

> [A] witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or

---

[7] In Georgia's new Evidence Code, which took effect on January 1, 2013 – after the trial of this case – prior inconsistent statements are addressed in OCGA §§ 24-6-613 and 24-8-801 (d) (1).

[8] In addition to raising an objection based on improper bolstering, Adams objected to the entire recorded statement being played for the jury on the ground that Izzo's lawyer's statements were on the recording and were inadmissible except to the extent that they provided context. In response, the court ruled that the transcript of the recording should be read, omitting the lawyer's statements.

improper motive are raised during cross-examination. As stated by a well-respected commentator:

> Thus, to rebut a charge that a witness is motivated or has been influenced to testify falsely or that his testimony is a recent fabrication, evidence is admissible that he told the same story *before* the motive or influence came into existence or *before* the time of the alleged recent fabrication. [In those circumstances], the prior consistent statement is defined as not hearsay . . . and thus is admitted into evidence.
>
> Unless a witness's veracity has affirmatively been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury.

*Woodard*, 269 Ga. at 320 (footnotes omitted; emphasis in original).

Put another way, "to be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, the prior statement must 'predate the alleged fabrication, influence, or motive.'" *Duggan v. State*, 285 Ga. 363, 366 (677 SE2d 92) (2009) (citing *Tome v. United States*, 513 U. S. 150, 158 (115 SCt 696, 130 LE2d 574) (1995)).[9] "'If the statement was made later, proof of the statement does not assist the jury to evaluate the witness's testimony because the reliability of the statement is subject to the same doubt as the trial testimony.'" *Character v. State*, 285 Ga. 112, 119 (674 SE2d 280) (2009) (citation omitted).[10]

Applying this principle, this Court has held that a co-defendant's prior statement made with the alleged motive of currying favor with the State to obtain a plea agreement is not admissible as a prior consistent statement when the co-defendant testifies for the State at

---

[9] The district attorney also asserts on appeal that federal courts do not require that the consistent statement be made prior to the time the alleged motive to fabricate arose, citing *United States v. Anderson*, 782 F2d 908, 915-916 (11th Cir. 1986). The Eleventh Circuit's position was rejected, however, by the United States Supreme Court in *Tome*, which held that, to be admissible, a prior consistent statement must predate the alleged motive to fabricate. See 513 U. S. at 155-156.

[10] Our new Evidence Code states this principle expressly: "If a prior consistent statement is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose." OCGA § 24-6-613 (c).

trial. See *Mister v. State*, 286 Ga. 303, 307 (687 SE2d 471) (2009) (holding that a co-defendant's prior statements made at his guilty plea hearing were not admissible to corroborate his trial testimony because the witness's "guilty plea hearing did not predate any improper motive he may have had to testify against [the defendant]"). See also *Moon v. State*, 288 Ga. 508, 511-512 (705 SE2d 649) (2011) (holding that the defendant's cellmate's statement given to the police in a pre-trial interview did not predate the cellmate's alleged motive to fabricate his testimony to obtain a plea deal on his pending federal drug charges); *Duggan*, 285 Ga. at 366 (holding that statements given by a witness at the police station on the night of the crime "did not predate any alleged influence or motive, such as the fact that [the defendant] was accused of killing one of [the witness's] relatives, that might have influenced [the witness's] testimony").

The only motive to fabricate that Cowart and Adams alleged Izzo to have when he testified at trial — the desire to tell a story that the State would reward with reduced charges and a shorter sentence — arose no later than the time Izzo made his proffer during plea negotiations. Indeed, in its briefs and at oral argument, the State did not identify any motive Izzo had when testifying at trial that he did not also have when making his proffer statement. The fact that the State apparently had not yet offered a specific plea bargain to Izzo when he made his proffer does not distinguish this case from *Mister* and *Moon*; if anything, that would make his motivation to please the State when giving the proffer even greater than if he had the plea deal in hand. Accordingly, the trial court erred in admitting Izzo's proffer statement, which did not qualify as a prior consistent statement and was instead improperly used to bolster the witness's credibility.[11]

(b) To reverse Cowart's convictions, however, this error must have been harmful. The improper admission of bolstering evidence is a non-constitutional, evidentiary error, so we must determine whether it is "highly probable" that the error did not contribute to the jury's guilty verdict. See *Boothe v. State*, 293 Ga. 285, 289-290 (745 SE2d 594) (2013). In doing so, " 'we may not rely on the fact that [the witness] gave testimony at trial that was consistent with the prior statement that should not have been introduced.' " *Duggan*, 285 Ga.

---

[11] The district attorney also argues on appeal that the proffer was admissible on re-direct examination under the "rule of completeness." See former OCGA § 24-3-38 (now § 24-8-822); *Westbrook v. State*, 291 Ga. 60, 62-63 (727 SE2d 473) (2012). However, Cowart and Adams did not introduce any portion of the proffer statement on cross-examination, so there was nothing to "complete."

at 366-367 (citation omitted). In other words, we cannot look to Izzo's improperly bolstered testimony to show that the bolstering error was harmless.

Two victims — Antle and Levi — identified Cowart as one of the armed robbers, and Antle identified him as the shooter. (Levi did not see who shot him as he rounded the corner of the house.) Antle also testified that he, Levi, and Giroir were all unarmed. And Cowart was found in the Atlanta hotel room with Izzo, Adams, cash, and marijuana on the morning after the shootings, having driven there in the getaway vehicle. Because of the strong evidence supporting Cowart's convictions, beyond any evidence from Izzo, we conclude that the trial court's erroneous admission of Izzo's proffer statement was harmless as to Cowart. See *Mister*, 286 Ga. at 307; *Moon*, 288 Ga. at 512; *Duggan*, 285 Ga. at 366-367.

### Case No. S13A1296 (Adams v. The State)

5. For the reasons discussed in Division 4 (a) above, it was also error for the trial court to admit Izzo's proffer statement as evidence against Adams. But as to Adams, unlike Cowart, we cannot say that this error was harmless.

As noted previously, we must disregard Izzo's improperly bolstered testimony in deciding whether the erroneous admission of his proffer statement was harmful. See *Duggan*, 285 Ga. at 366-367. Without Izzo's testimony, there is no evidence whatsoever indicating that Adams had knowledge of the armed robbery before it happened. Adams did have access to the getaway vehicle, which belonged to his girlfriend's mother, who testified that her daughter was using the car at the time of the crimes. But no one except Izzo identified Adams at the crime scene or placed him with Izzo and Cowart until after the crimes were complete. Adams was found with Cowart and Izzo in the hotel room in Atlanta the next morning. But he did not use a false name to rent the room (that was Izzo); he was not in actual possession of marijuana (that was also Izzo); and while Izzo testified that the cash each man had was a split of the robbery proceeds, there was no other evidence linking Adams's $161 (an amount much different from Izzo's $353 and Cowart's $535) to the robbery, as indeed there was no evidence of what amount of money was taken during the robbery.

Due to the lack of substantial evidence against Adams apart from Izzo's testimony, it is likely that the improper bolstering of that testimony contributed to the jury's guilty verdict and therefore was harmful error as to Adams. See *Cash v. State*, 294 Ga. App. 741, 746 (669 SE2d 731) (2008) (concluding that the erroneous admission of a prior consistent statement of a witness contributed to the guilty

verdict because the only evidence of the defendant's guilt was that witness's testimony and the improperly admitted statement "added critical weight" to it). Because the admission of the proffer was harmful error, Adams is entitled to a new trial. See id.

6. Adams also challenges the sufficiency of the evidence presented against him at trial. We must address this contention, because if the evidence of Adams's guilt was legally insufficient, he could not be retried. See *McDaniel v. Brown*, 558 U. S. 120, 131 (130 SCt 665, 175 LE2d 582) (2010). Unlike when evaluating the harmfulness of the trial court's error, however, when determining whether the evidence presented to the jury was legally sufficient to support Adams's convictions, we can consider Izzo's properly admitted but improperly bolstered trial testimony. See *Jackson*, 443 U. S. at 318 (explaining that the reviewing court must determine "whether the *record evidence* could reasonably support a finding of guilt") (emphasis added); *McDaniel*, 558 U. S. at 131 (" '[A] reviewing court must consider all of the evidence admitted by the trial court,' regardless of whether that evidence was admitted erroneously." (citation omitted)).[12]

Izzo's testimony alone would normally be sufficient to support Adams's conviction, but because Izzo was an accomplice, his testimony had to be corroborated.

> The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

Former OCGA § 24-4-8 (now § 24-14-8). But we have explained that

---

[12] Indeed, in deciding the sufficiency issue, we could also consider the improperly admitted proffer statement. See *McDaniel*, 558 U. S. at 131. Under Georgia's old Evidence Code, hearsay was deemed to have no probative value and so could not be considered in determining the sufficiency of the evidence. See *Livingston v. State*, 268 Ga. 205, 209 (486 SE2d 845) (1997) (explaining that, because it is "wholly without probative value," "erroneously-admitted hearsay may not be considered in reviewing the sufficiency of the evidence," unless it could be made admissible upon retrial by laying the proper foundation). Prior consistent statements, however, even if inadmissible as improper bolstering, were not considered "hearsay" if the witness who made the prior statement testified at trial. See Paul S. Milich, Georgia Rules of Evidence, § 17:14 (2012-2013 ed.) ("Under Georgia's pre-2013 definition of hearsay, the out-of-court statements of a testifying witness were not hearsay."). Izzo's proffer statement was largely duplicative of his in-court testimony, however, so it makes little difference whether we consider it. We note that the new Evidence Code includes new rules dealing with prior consistent statements. See OCGA §§ 24-6-613 (c), 24-8-801 (d) (1) (A).

under this provision,

> sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

*McKibbins v. State*, 293 Ga. 843, 846 (750 SE2d 314) (2013) (citation omitted).

Adams's links to the getaway vehicle and his presence the next morning with the vehicle, Izzo and Cowart, and marijuana and cash, although insufficient to prove Adams's guilt independent of Izzo's testimony, provide the necessary slight corroboration of Izzo's testimony that Adams was a party to the crimes. When viewed in the light most favorable to the verdict, the evidence presented at trial was sufficient to authorize a rational jury to find Adams guilty beyond a reasonable doubt of the crimes for which the jury returned guilty verdicts. See *Jackson*, 443 U. S. at 319. Accordingly, the State may retry Adams if it so chooses.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing in Case No. S13A1295. Judgment reversed in Case No. S13A1296. All the Justices concur.*

DECIDED NOVEMBER 18, 2013 —
RECONSIDERATION DENIED DECEMBER 11, 2013.

*Amy L. Ihrig*, for appellant (case no. S13A1295).

*Zipperer, Lorberbaum & Beauvais, Steven Beauvais, Steven H. Sadow*, for appellant (case no. S13A1296).

*Meg E. Heap, District Attorney, Ann M. Elmore, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.