303 Ga. 141
FINAL COPY

S17A1915.  McCOY v. THE STATE.

HUNSTEIN, Justice.

Appellant Johnathan McCoy was convicted of felony murder and associated offenses in connection with the shooting death of LaShawn Beasley. On appeal, McCoy contends that he was improperly sentenced and that he received ineffective assistance of counsel.  Though we agree that McCoy was erroneously sentenced, we otherwise affirm.[1]

---

[1] In March 2015, a DeKalb County grand jury indicted McCoy on the charges of malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  McCoy was initially tried in October 2015; that trial, however, ended in a mistrial because the jury was unable to reach a verdict.  McCoy was tried a second time in May-June 2016; this trial, too, ended in a mistrial following a Brady violation and improper witness testimony.

McCoy was tried a third time on August 22-24, 2016, after which the jury acquitted McCoy of malice murder but found him guilty of each of the remaining offenses.  The trial court sentenced McCoy to concurrent life sentences for the felony murder counts and a consecutive suspended five-year sentence for possession of a firearm during the commission of a felony.  The other charges were merged.  McCoy filed a motion for new trial on August 26, 2016, and amended it on March 9, 2017.  The amended motion for new trial was denied on June 5, 2017.  On June 15, 2017, McCoy filed a timely notice of appeal.  This case was docketed to the August 2017

Viewing the evidence in a light most favorable to the verdicts, the evidence adduced at trial established as follows. Two days before the murder, the victim, LaShawn Beasley, attended a party at the home of McCoy's brother, Eric McCoy. During the party, Eric fought with an unruly guest, and Beasley attempted to intervene; the police ended up at the home, and Eric ultimately went to the hospital due to injuries sustained in the fight. Days later, Beasley was in his driveway exiting a vehicle driven by Quisean Fredricks; Fredricks remained in the driver's seat while Beasley retrieved items from the trunk. According to Fredricks, he witnessed McCoy approach the vehicle, heard Beasley say, "I wasn't the one hitting your brother," and then heard a gunshot. Fredricks observed Beasley bounce off the car and saw McCoy "walking backwards with the gun out" to a black Mercedes-Benz, which Fredricks recognized as belonging to McCoy's girlfriend.

Robin Griffin, Beasley's live-in girlfriend, was inside their residence when Fredricks and Beasley pulled into the driveway. Upon hearing the gunshot, she looked out the door and saw McCoy with his "arm still extended with the gun."

term and was thereafter submitted for decision on the briefs.

2

Griffin, too, witnessed McCoy drive off in a black Mercedes-Benz that she recognized as belonging to McCoy's girlfriend. According to Griffin, Beasley calmly and assuredly identified McCoy as the shooter during the ride to the hospital; Beasley later died as a result of the gunshot wound. Kelly Brown, an across-the-street neighbor, testified that she glanced out her window after hearing the gunshot and saw McCoy with a gun, "standing in a stance . . . as if he were at a shooting range." The jury also heard testimony that, on at least two prior occasions, McCoy had brandished or pointed a firearm at Beasley in the heat of an argument.

1. Although McCoy does not challenge the sufficiency of the evidence, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence as summarized above was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that McCoy was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. McCoy argues that trial counsel rendered constitutionally ineffective assistance by failing to adequately cross-examine Fredricks. This claim has no

3

merit.

In order to prevail on a claim that trial counsel was ineffective, McCoy "must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense." Terry v. State, 284 Ga. 119, 120 (663 SE2d 704) (2008) (citing Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (745 SE2d 637) (2013). With respect to the second Strickland prong, "to show that he was prejudiced by the performance of his lawyer, [Appellant] must prove 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Arnold v. State, 292 Ga. 268, 269 (737 SE2d 98) (2013) (quoting Strickland, 466 U. S. at 694). McCoy has failed to satisfy either prong.

According to McCoy, trial counsel should have impeached Fredricks with his sworn testimony from an earlier trial. At issue is inconsistent testimony

4

concerning the exact positioning of Fredricks and Beasley at the time of the shooting, whether Fredricks actually saw the shooter, and what Fredricks said and did immediately following the shooting. However, "[t]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation and punctuation omitted.) Cooper v. State, 281 Ga. 760, 762 (642 SE2d 817) (2007). As the trial court explained in its order denying McCoy's motion for new trial, the record plainly establishes that trial counsel conducted a thorough and sifting cross-examination of Fredricks, impeaching him with his earlier inconsistent statements to, and interviews with, investigators. Though trial counsel faulted herself for failing to impeach Fredricks with his earlier testimony, we cannot say that either her cross-examination of Fredricks or her impeachment tactics were objectively unreasonable. See, e.g., Harrington v. Richter, 562 U. S. 86, 110 (131 SCt 770, 178 LE2d 624) (2011) (recognizing that Strickland "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind"). "[T]rial counsel engaged in extensive impeachment of [Fredricks], and it cannot be said that in doing so counsel acted beyond the bounds of reasonable conduct and judgment; thus, [McCoy] fails to show

5

deficient performance on trial counsel's part." Walker v. State, 294 Ga. 752, 757 (755 SE2d 790) (2014).

McCoy has also failed to demonstrate prejudice. As an initial matter, most of the factual inconsistencies highlighted by McCoy — which concern the precise positioning of Fredricks and Beasley at the time of the shooting, as well as Fredricks' recollection of what he said and did immediately after the shooting — would have had only marginal impeachment value and, thus, would have added little to McCoy's defense. Nevertheless, all of these factual inconsistencies — including whether Fredricks actually saw McCoy shoot Beasley — were explored in great detail by trial counsel during Fredricks' cross-examination, and the jury was well acquainted with Fredricks' changing account of the shooting. See Cannon v. State, 288 Ga. 225 (6) (a) (702 SE2d 845) (2010) (trial counsel's failure to impeach witness with prior inconsistent statement did not result in Strickland prejudice where jury was aware of the prior inconsistencies). Finally, even if trial counsel had engaged in additional impeachment with the second trial transcript, there were still two other eyewitnesses who knew McCoy, identified him as the shooter, and gave similar descriptions of how he shot the victim. In light of the strong evidence of guilt,

there is no reasonable probability that the outcome of the trial would have been different had trial counsel utilized alternative impeachment evidence. See, e.g., Rainwater v. State, 300 Ga. 800 (3) (797 SE2d 889) (2017).

3. Finally, we must vacate McCoy's sentences and remand this case for resentencing. The trial court erroneously sentenced McCoy on two felony murder verdicts involving the same victim; one of those verdicts was vacated by operation of law. See Cowart v. State, 294 Ga. 333 (2) (751 SE2d 399) (2013). "[T]he decision as to which of the two felony murder verdicts should be deemed vacated — a decision that may affect which other verdicts merge and thus what other sentences may be imposed — is left to the discretion of the trial court on remand." Id. at 336.

Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.

Decided February 19, 2018.

Murder. DeKalb Superior Court. Before Judge Hunter.

Ryan C. Locke, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Gerald Mason, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General, for appellee.