**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 1, 2021**

# In the Court of Appeals of Georgia

A21A0135. CLARK v. THE STATE.

McFADDEN, Chief Judge.

After a jury trial, Jeffrey Howard Clark was convicted of various offenses stemming from a physical altercation between him and his 78-year-old mother. He argues on appeal that the state improperly withdrew a plea offer, but he has neither alleged nor shown trial court error in this regard. Clark also argues that he received ineffective assistance of trial counsel in several respects, but he is not entitled to reversal. In some instances he is not entitled to reversal because he has failed to show both deficient performance and prejudice, in others because his claims of ineffective assistance were not made and ruled on below and thus are procedurally barred. So we affirm.

1. *Trial evidence.*

Viewed in the light most favorable to the verdict, the trial evidence showed that on July 13, 2017, Clark scratched his mother's arm and struck her in the head with a cell phone during an argument at their shared residence. His mother, Annette Richards, sustained visible injuries during the altercation, which occurred in the presence of Clark's nine-year-old daughter, K. C. When law enforcement officers were dispatched to the residence, Clark fought with them.

Clark presented an accident defense at trial. At the time of the incident, he was suffering from a badly burned foot, for which he was taking prescribed pain medication. Clark testified at trial that, on July 13, 2017, Richards had been drinking alcohol. He testified that, during a verbal argument with Richards, he took hold of her arm because she was unsteady and to steer her out of K. C.'s presence. He testified that Richards then stepped on his burned foot, causing him to fall to the ground in extreme pain. He speculated at trial that, when he fell, he accidentally pulled Richards into a wall, causing her injuries. He testified that, after the incident, he took more pain medication as well as a sleeping pill and that the law enforcement officers dispatched to the residence woke him from a deep sleep. He testified that he was angry with the officers because they suggested that he, a recovering alcoholic, had been drinking that

evening, and he testified that he pushed the officers in an effort to get to K. C., who had been taken outside the residence by one of them.

Richards, K. C., and Clark's other daughter, 13-year-old M. C., testified at trial on behalf of the state. The state presented evidence that, while he was in jail after the incident, Clark attempted to influence these witnesses' testimony to support his accident defense.

The trial evidence showed that Clark sent Richards letters asking her to withdraw the statement she had given the police and to sign an affidavit — which he had written — saying that the incident was an accident. In those letters, he also encouraged Richards to refuse to testify at trial, even if she was subpoenaed to appear. Richards did not see the letters, which were intercepted by Clark's sister.

Clark also wrote letters and sent an affidavit to M. C., who had been on a video call with K. C. when the incident occurred. M. C. understood that she was supposed to sign the affidavit to help Clark get out of jail, but she refused to do so. Clark spoke with M. C. on the phone from jail several times, as well, and in those calls, which were played to the jury, he berated and threatened the girl.

Finally, Clark sent letters and an affidavit and made calls to K. C. In those communications, Clark tried to influence K. C.'s perception of the incident, including

telling her that Richards had been drunk and had stepped on his foot on the day of the incident; he instructed her on how to answer certain questions if asked; and he told her that if he was found guilty she would not see him again.

2. *Withdrawal of plea offer*.

The record shows that the state made Clark several different plea offers. At a hearing that occurred a few days before trial, Clark's trial counsel initially announced that Clark wished to proceed with a trial. But during a recess, Clark changed his mind and decided to accept one of the pleas. Also during the recess, the prosecutor first learned of the recorded calls that Clark made to his daughters from jail, causing the prosecutor to decide to withdraw the plea. The prosecutor notified Clark's trial counsel of this and both the prosecutor and Clark's trial counsel listened to some of the recordings during that recess. Trial counsel testified at the hearing on the motion for new trial that he believed the calls could support an additional charge of influencing a witness.

When the hearing resumed after the recess, the following occurred. The prosecutor announced to the trial court, "I think Mr. Clark wanted to accept the plea, but I don't think that we can go forward with it." She then explained about learning of Clark's calls to his daughters and generally described one of the calls from Clark

to M. C., which she had listened to during the recess. The trial court stated, "you don't have to make a plea offer if you have got new evidence," and asked the prosecutor to listen to all of the calls before deciding how to proceed. The trial court indicated that the issue of a plea could be taken back up on the morning of trial and reiterated to the prosecutor that, "if you got new things that change the plea, you can withdraw it. You can do that." Clark's trial counsel did not request that the plea offer be enforced or otherwise object to this course of action.

On the first day of trial, the prosecutor announced to the trial court that the state had made a new plea offer to Clark, taking into account the newly-discovered information about the calls from jail, and that Clark had declined that offer. Clark's trial counsel responded: "That is correct, your honor. We did, when we were last here, Mr. Clark did accept the previous offer which was withdrawn. I had advised him, you know, that it may be in his best interest to still move forward on the plea and go non-negotiated, but he has decided to move forward with trial." Again, trial counsel did not ask the trial court to enforce the previous offer, nor did he object to the withdrawal of that offer.

On motion for new trial, Clark argued for the first time that the withdrawal of the plea offer was improper. The trial court denied Clark a new trial on that ground.

5

Assuming without deciding that Clark's challenge to the withdrawal of the plea offer in his motion for new trial preserved the issue for appellate review, he has not shown trial court error. In his appellate brief, Clark "does not urge that the trial court erred in failing to enforce any agreed-upon plea bargain, nor does he otherwise specify any error allegedly committed by the trial court [in connection with the state's withdrawal of the plea offer]." *Umbehaum v. State*, 251 Ga. App. 471, 473 (3) (554 SE2d 608) (2001). Moreover, even if trial counsel had asked the trial court for enforcement or other relief, the trial court was not required to enforce the plea. "In Georgia, a trial court is not bound by a plea agreement between the defendant and the [s]tate and has the discretion to refuse to accept a negotiated guilty plea." *Gramiak v. Beasley*, 304 Ga. 512, 520 (I) (D) (820 SE2d 50) (2018). And the trial court explicitly stated in her order that, in light of the calls Clark had made from jail, she would have exercised this discretion to reject the plea, explaining: "It is the Court's responsibility to govern the administration of justice and protect the community, particularly the vulnerable populations. The Court finds that the offers failed to adequately protect [Clark's] juvenile children and elderly mother."

Although Clark argues that the trial court did not listen to those calls during the pre-trial hearing, the prosecutor indicated at the hearing on the motion for new trial

6

that, had she been forced to proceed with the plea at that hearing, she would have presented the calls to the trial court at that time. Moreover, when the trial court ruled on Clark's improper-withdrawal argument at the hearing on his motion for new trial, she *had* heard the recordings of the calls, because they were played at trial.

Under these circumstances, Clark has neither asserted nor shown any abuse of discretion by the trial court in connection with the state's withdrawal of the plea offer. See *In the Interest of R. W.*, 315 Ga. App. 227, 232 (3) (c) (726 SE2d 708) (2012) ("An abuse of discretion occurs where the trial court significantly misapplies the law or clearly errs in a material factual finding.") (citation and punctuation omitted).

3. *Ineffective assistance of trial counsel.*

Clark argues that he received ineffective assistance of trial counsel. To prevail on this claim, Clark "must show both that his counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable. . . . If [Clark] fails to satisfy either the deficient performance or the prejudice prong of [this] test, [we are] not required to examine the other." *Slaton v. State*, 303 Ga. 651, 652-653 (2) (814 SE2d 344) (2018) (citation and punctuation omitted). In reviewing the trial court's ruling on the ineffective assistance of counsel claims, we accept the trial court's factual findings and credibility

7

determinations unless they are clearly erroneous, but we review the trial court's legal conclusions de novo. *Davis v. State*, 306 Ga. 430, 432 (831 SE2d 804) (2019). "And [as to those issues where there is an] absence of explicit factual and credibility findings by the trial court, we presume implicit findings were made supporting the trial court's decision." Id. at 432-433.

Clark argues that his trial counsel was deficient in several respects: by failing to object when the state withdrew the plea offer; by failing to adequately cross-examine two of the state's witnesses (K. C. and Richards); and by failing to introduce expert testimony to challenge Richards's credibility. As detailed below, he has not shown he is entitled to reversal on any of these grounds.

(a) *Withdrawal of plea offer.*

Clark argues that his trial counsel rendered ineffective assistance by not objecting when the state withdrew its plea offer at the pretrial hearing. But as discussed above, even if Clark's trial counsel had objected to the withdrawal, the trial court was not required to enforce the plea, see *Gramiak*, 304 Ga. at 520 (I) (D), and in the order denying Clark's motion for new trial the trial court made it abundantly clear that she would *not* have accepted the plea on account of the jail calls. So any effort by Clark's trial counsel to enforce a plea agreement would have been futile.

8

"The failure to pursue a futile objection does not amount to ineffective assistance." *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008). See also *Gramiak*, supra (to show prejudice in this context the defendant must "show a reasonable probability that the trial court would not have refused to accept the plea").

(b) *Cross-examinations.*

Clark argues that his trial court rendered ineffective assistance by failing to adequately cross-examine Clark's daughter, K. C., and his mother, Richards, who both testified for the state. But

> [t]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel. More specifically, the extent of cross-examination is a strategic and tactical decision. Decisions about cross-examination do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances.

*Gaston v. State*, 307 Ga. 634, 642 (2) (d) (837 SE2d 808) (2020) (citations, punctuation, and emphasis omitted). Clark has not made this showing.

(i) *K. C.*

Trial counsel chose not to cross-examine K. C., who was ten years old at the time of trial. Clark argues that this constituted deficient performance, because his trial

counsel could have elicited additional helpful testimony from K. C. on cross-examination, pointing to the girl's testimony at the hearing on the motion for new trial. At that hearing, K. C. testified that she did not tell her mother or sister that she had seen Clark hit Richards, which contradicted those persons' trial testimony. K. C. also testified at that hearing that Richards had been drinking and "acting a little loopy" on the day of the incident.

But trial counsel testified at the hearing on the motion for new trial that he believed the risk of eliciting negative testimony from K. C. on cross-examination outweighed the potential benefit of asking her more questions. Trial counsel "felt like [K. C.'s] testimony on direct helped Mr. Clark, and he just didn't want to . . . take the risk of any bad evidence coming in." He explained that because K. C. testified on direct examination at trial that she did not see or hear Clark hit Richards, her testimony did not contradict the defense theory of accident. He also explained that he was concerned further questioning of K. C. would create the impression that Clark had influenced her testimony.

Clark has not shown that trial counsel's decision was objectively unreasonable. As discussed above, the state presented evidence at trial that Clark had, in fact, tried to influence K. C.'s trial testimony. And the trial court expressly found that K. C.'s

10

hearing testimony — the testimony that Clark argues should have been elicited on cross-examination — was not credible. Under these circumstances, "trial counsel's decision [not to cross-examine her] is exactly the kind of strategic and tactical decision trial counsel was empowered to make." *Gaston*, 307 Ga. at 643 (2) (d). Consequently, he cannot establish that his trial counsel performed deficiently. See id.

(ii) *Richards*.

Clark argues that his trial counsel's cross-examination of his mother, Richards, was inadequate. He asserts that a more thorough cross-examination of Richards could have revealed that, at the time of the altercation, she was cognitively impaired due to a combination of alcohol and the prescription sleep medication Ambien.

At the hearing on the motion for new trial, trial counsel testified that he decided not to cross-examine Richards about her drinking because "her answer [on direct examination as to whether she had been drinking that evening] was no, and [he] didn't really want to draw anymore attention to it." When asked whether she had anything to drink that evening, Richards had testified, "I have to say I don't believe I did[.]" Other trial evidence, including a video recording of Richards's interactions with law enforcement shortly after the incident, supported Richards's testimony that

11

she had not been drinking. Instead, trial counsel elicited testimony that Richards had been drinking through direct examination of Clark.

At the hearing on Clark's motion for new trial, Richards contradicted her trial testimony, stating that she *had* been drinking that day. But this does not mean she would have contradicted herself had she been cross-examined on the point at trial, and an unsuccessful cross-examination on the point would have highlighted evidence that was not helpful to Clark's defense. Under these circumstances, we cannot say that trial counsel was objectively unreasonable in not pursuing the issue on cross-examination. See *Watts v. State*, 308 Ga. 455, 460-461 (2) (841 SE2d 686) (2020) (holding that trial counsel's decision to elicit evidence to challenge a witness's credibility through a means other than cross-examination was not objectively unreasonable where cross-examination might highlight evidence negative to the defense).

As to trial counsel's failure to cross-examine Richards about her use of Ambien, we must look at what trial counsel knew about that issue at the time of his performance, not in hindsight in light of later-obtained information. See *Belton v. State*, 270 Ga. 671, 672-673 (3) (512 SE2d 614) (1999). At the hearing on his motion for new trial, Clark testified that his trial counsel was aware that Richards used

12

Ambien and that Clark wished to develop evidence of its effects on her, especially in combination with alcohol. But his trial counsel testified that, while Clark may have told him before trial about Richards taking sleeping medications, "most of . . . what [Clark] discussed was her drinking" and that, from trial counsel's discussions with Clark, Richards's use of Ambien was not "on [trial counsel's] radar." The trial court was authorized to credit trial counsel's testimony over Clark's testimony on this point. See *Davis*, 306 Ga. at 432-433. And based on trial counsel's testimony about the matters he discussed with Clark, we cannot say that no competent attorney in his position would have failed to question Richards about her Ambien use. See *Gaston*, 307 Ga. at 642 (2) (d).

In support of this claim of error, Clark suggests in his appellate brief that his trial counsel should have done additional pre-trial research on the drugs used by Richards. But he did not allege insufficient trial preparation as a ground for his ineffective assistance claim in his motion for new trial or obtain a ruling from the trial court on that ground. So to the extent he argues on appeal that his trial counsel was deficient because his trial preparation was insufficient, that claim is procedurally barred. See *Cowart v. State*, 294 Ga. 333, 337 (3) (751 SE2d 399) (2013).

(c) *Expert testimony.*

13

Clark argues that his trial counsel was ineffective in failing to present expert witness testimony about the effects of alcohol and Ambien in combination. Clark did not assert this as a separate ground to support his claim of ineffective assistance before the trial court; he only raised the issue as part of his argument that his trial counsel was deficient in cross-examining Richards. And the trial court made no ruling on whether trial counsel was deficient in failing to obtain an expert witness, indicating that the trial court did not treat the failure to introduce expert testimony as one of Clark's asserted grounds of ineffectiveness. See *Cowart*, 294 Ga. at 338 (3) (trial court's failure to address an ineffective assistance claim in ruling on a motion for new trial indicated that the court did not view the claim to be a part of the motion). This "mean[s] that there is no ruling on the issue for this [c]ourt to review." Id. See also *Hornbuckle v. State*, 300 Ga. 750, 756 (5) (797 SE2d 113) (2017). Because this claim of ineffective assistance of counsel was neither raised in the motion for new trial nor ruled upon by the trial court, it is procedurally barred. *Cowart*, supra at 337 (3).

*Judgment affirmed. Rickman, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

14