S10A1005. CANNON v. THE STATE.
(702 SE2d 845)

CARLEY, Presiding Justice.

A jury returned verdicts finding Chas Clifford Cannon guilty of felony murder, aggravated assault, and possession of a firearm during the commission of a crime. The trial court entered judgments of conviction and sentenced Cannon to life imprisonment for the felony murder charge and a suspended consecutive five-year term for the weapons charge. The aggravated assault count merged into the felony murder conviction. Cannon appeals after the denial of a motion for new trial.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that on the night of the shooting, February 16, 2006, the victim went to the Travelodge hotel to meet with two women, Tonya Flemister and Brandy Clark. At one point, the two women accompanied the victim to the ATM, where he withdrew a large sum of money. When they returned to the hotel, the victim went to Ms. Clark's room in order to purchase drugs. Present in the room were Cannon and another man named Jay. After being informed that the victim had a large sum of money on him, Cannon followed the victim out of the room. Shortly thereafter, Cannon shot the victim once in the head and once in the chest. At least five people outside of the hotel at that time witnessed the shooting.

After the shooting, Cannon went to an acquaintance's hotel room, visibly shaken. He said that he had just shot a man and, after pulling a gun out of his pocket, stated "I think he is dead." Cannon also said that the shooting occurred in the course of a robbery, that

_____

[*] The crimes occurred on February 16, 2006, and the grand jury returned the indictment on May 26, 2006. The jury found Cannon guilty on November 14, 2006, and the trial court entered the judgments of conviction and sentences on November 21, 2006. The initial motion for new trial was filed on November 21, 2006, amended on November 15, 2007, and denied on December 31, 2007. Cannon filed the first notice of appeal on January 7, 2008. The case was originally docketed in this Court as Case Number S08A1539. On July 2, 2008, we granted a motion to remand the case so that new counsel could be appointed to pursue ineffectiveness claims against trial counsel. The ineffectiveness claims were argued on March 25, 2009, and subsequently denied on June 5, 2009. The trial court clerk's office transmitted the record to this Court, and, on January 11, 2010, we dismissed the case for lack of jurisdiction because Cannon failed to file a timely notice of appeal. A motion for out-of-time appeal was filed on January 20, 2010, and granted on January 21, 2010. Cannon filed a notice of appeal on January 25, 2010. The case was docketed in this Court for the April 2010 term, and submitted for decision on the briefs.

the victim had reached into his pocket, and that Cannon, thinking that the victim was reaching for a weapon, shot him twice. The victim's body was later found by the authorities along a fence in the parking lot of the Travelodge hotel. The evidence was sufficient for a rational trier of fact to find Cannon guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Cannon contends that the trial court erred by prohibiting Cannon's father from testifying that, contrary to previous testimony by the arresting detective, Cannon did not make the statement "Is this about me shooting Old Boy" at the time of his arrest. He argues that the father's testimony concerning whether or not this statement was made was admissible for the purpose of impeaching the detective's testimony. However, a transcript of the trial reveals that defense counsel was allowed to question the father as to whether Cannon made any statements to the police as he was being arrested, and the father stated that Cannon made no statements. Furthermore, Cannon's father testified that his son responded in the negative when the arresting officer asked whether he knew why the police were at his house. Thus, Cannon was actually able to present evidence that rebutted the detective's testimony that Cannon made an admission of guilt as he was being arrested. Therefore,

> [p]retermitting the question of whether the [proffered testimony] was admissible evidence, we find its exclusion harmless since [the father] later testified to virtually the same information. . . . " '(E)vidence wrongfully withheld is harmless where admissible evidence of the same fact is introduced.' [Cit.]" [Cit.]

*Ebenezer v. State,* 191 Ga. App. 901, 902 (3) (383 SE2d 373) (1989). See also *Nix v. State,* 280 Ga. 141, 144 (4) (625 SE2d 746) (2006) (holding that the exclusion of inculpatory statements of a third party was harmless because the "excluded testimony was cumulative of other evidence introduced").

3. Cannon contends that the trial court erred in denying his motion for mistrial after the State improperly impeached the defense's main witness, Cannon's father, by asking him if he was currently in jail.

> "A witness may be impeached in any one of the methods set forth in (OCGA § 24-9-80 et seq.), by disproving facts testified to by him ((OCGA § 24-9-82)), by previous contradictory statements ((OCGA § 24-9-83)), evidence of general bad character ((OCGA § 24-9-84)), and proof of

conviction of a crime involving moral turpitude ([cit.]).''
[Cit.]

*Vincent v. State*, 264 Ga. 234, 234-235 (442 SE2d 748) (1994). In the present case, the State's question was an obvious attempt "to impeach or destroy the credibility of [the] witness by showing that [he] was then incarcerated in jail.'' *Johnson v. State*, 144 Ga. App. 406 (1) (240 SE2d 919) (1977). The fact that the witness was currently incarcerated had no relevancy to the crimes on trial, and the State proffered no other reason for the evidence. If the State was attempting to impeach the witness by introducing evidence of a conviction of a crime of moral turpitude, "[t]he fact of [that] conviction must be shown by record evidence and not by testimony. [Cit.]'' *Johnson v. State*, supra. Therefore, the State's question was an improper attempt to impeach the defense's witness.

Although we hold that the State's impeachment attempt was improper, we also find that, in the present case, the trial court did not err in denying the motion for mistrial. Cannon relies on *Polk v. State*, 202 Ga. App. 738, 740 (2) (415 SE2d 506) (1992), which held that questioning a defense witness about a prior crime that did not qualify as a crime of moral turpitude was not harmless error. However, the Court of Appeals reasoned that the error was not harmless because the witness was "crucial to the defense in that he was the only eyewitness . . . to testify, and he corroborated the [defendant's claim of self-defense].'' *Polk v. State*, supra at 739-740 (2). Also, the Court of Appeals alluded to the possibility that, if the trial court had issued a curative instruction, the error may have been held harmless. *Polk v. State*, supra. Here, the witness was not crucial to the defense as he was not an eyewitness to the crime and could not bolster any self-defense claim since he was not present when the crime occurred. Furthermore, the trial court instructed the jurors to disregard the question and struck it from the consideration of the jury.

The present case is also distinguishable from *Johnson v. State*, supra, where the Court of Appeals also held that the questioning of a defense witness as to whether she was currently in jail was reversible error. In that case, the trial court had overruled the defense's objection to the line of questioning, allowed the State to continue questioning the witness concerning her incarceration, and issued no instruction for the jury to strike the testimony from consideration. *Johnson v. State*, supra at 407 (1). Here, the trial court sustained the defense's objection, prohibited the State from questioning the witness any further about his incarceration, and issued a curative instruction to the jury. Therefore, the trial court did not abuse its discretion in denying the motion for mistrial.

4. Cannon next contends that the trial court erred in failing to grant a mistrial after Ms. Clark testified that she was afraid of Cannon and his friends. Although this testimony clearly put Cannon's character in evidence, her testimony was admissible as it was relevant to her credibility as a witness and was being used to show "that [she was] testifying by reason of duress or fear. [Cit.]" *Parker v. State*, 226 Ga. App. 462, 464 (5) (486 SE2d 687) (1997). Ms. Clark had previously stated to the police as well as to others, including her mother, that she had witnessed Cannon shoot the victim and then search his pockets. She also had identified Cannon as the shooter from a photographic lineup. However, when the State called Ms. Clark as a witness at trial, she denied that she witnessed the shooting and claimed that her previous statements and identification of Cannon as the shooter were untrue. Thus, Ms. Clark's testimony concerning her fear of Cannon and his friends was "relevant to explain why [she] had [changed her story], and [thus constituted] evidence material to [the] case [that] is not inadmissible because it incidentally puts [Cannon's] character in issue. [Cits.]" *Smith v. State*, 165 Ga. App. 669, 670 (1) (302 SE2d 414) (1983) (holding that testimony that defendant had a reputation for hurting people was relevant to explain why the witness denied making a previous statement that implicated the defendant). See also *Carroll v. State*, 155 Ga. App. 514, 515 (1) (271 SE2d 650) (1980) (holding that witness' testimony that defendant threatened to kill anyone who informed on him was relevant to explain why the witness had changed his story). Moreover, in light of the fact that four other witnesses independently testified that they also observed Cannon shoot the victim and picked him out of a photographic lineup, even if Ms. Clark's testimony was improper, any error was harmless.

5. Cannon contends that the trial court erred by sua sponte dismissing a jury panel prior to jury selection. The trial court decided to draw a new panel of jurors because the first one was not a good representative panel since, out of 48 jurors, only eight were African-American and only three of them were males. However, Cannon failed to object contemporaneously to the trial court's dismissal of the original panel, and thus this issue has not been preserved for review. *Wilkerson v. State*, 286 Ga. 201, 205 (2) (b) (686 SE2d 648) (2009). Additionally,

"[i]t is well established that the system by which juries are selected does not include the right of any party to select certain jurors but to permit parties to protect themselves against prejudice by allowing them to exclude unacceptable jurors. Defendant has no vested right to a particular juror." [Cit.]

*Whittington v. State*, 252 Ga. 168, 174 (3) (313 SE2d 73) (1984). Even if the dismissal of the jury panel was erroneous, as long as the reason for dismissal was not constitutionally impermissible, the error " 'affords no ground of complaint if a competent and unbiased jury is selected.' [Cit.] There being no showing that a competent and unbiased jury was not selected, the assertion of error is without merit." *Coleman v. State*, 286 Ga. 291, 296 (5) (687 SE2d 427) (2009).

6. Cannon contends that the trial court erred by failing to conclude that he received ineffective assistance from his trial counsel. Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), "[t]o prevail on a claim of ineffective assistance of trial counsel, [Cannon] bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. [Cit.]" *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004). In order to establish prejudice, "a defendant [must] show 'a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.' [Cits.]" *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009). When reviewing an ineffective assistance claim, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. [Cits.]" *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

(a) Cannon first claims that his trial counsel rendered ineffective assistance by failing to file a second motion to suppress until the morning of trial and thus failing to secure a transcript of the hearing on the motion. Cannon argues that, by failing to secure a transcript, his counsel was unable adequately to impeach the testimony of the arresting detective, who had testified at various times to three different versions of a statement allegedly made by Cannon. However, the trial transcript reveals that defense counsel thoroughly cross-examined the arresting detective, who admitted that he had previously testified to three different versions of Cannon's alleged statement. Therefore, even assuming that trial counsel was deficient by failing to secure a transcript before trial to impeach the detective, this deficiency did not prejudice Cannon since the arresting detective admitted to his contradictory statements and, thus, "the inconsistencies were known to the jury even though the [prior inconsistent testimony] 'was not read verbatim into the record.' [Cit.]" *Duckworth v. State*, 268 Ga. 566, 569-570 (2) (492 SE2d 201) (1997).

(b) Cannon also contends that his trial counsel provided ineffective assistance by failing to object when the arresting detective testified that Ms. Clark had previously informed him that she told Cannon, just prior to the shooting, "Don't do it!" Cannon claims that the failure to object to this testimony constituted ineffective assis-

tance because Ms. Clark had already completed her testimony and had not been asked about this statement, and, therefore, the detective's testimony concerning Ms. Clark's alleged statement was not evidence of a prior inconsistent statement but actually inadmissible hearsay. Since the State did not ask Ms. Clark about this statement, it failed to lay a proper foundation for the admission of a prior inconsistent statement. See OCGA § 24-9-83 ("Before contradictory statements may be proved against him, . . . the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible."); *Miller v. State*, 300 Ga. App. 652, 654, fn. 12 (686 SE2d 302) (2009). Therefore, the detective's testimony was inadmissible hearsay. However, even if trial counsel's failure to object to this testimony was deficient, Cannon has failed to show a reasonable probability that the outcome of the trial would have been different if counsel had objected to the testimony. See *Miller v. State*, supra at 654. As previously stated, four eyewitnesses other than Ms. Clark testified that they saw Cannon shoot the victim, and they independently picked him out of a photographic lineup.

(c) During the State's closing argument, the prosecuting attorney stated the following:

> Taneseius Coons. She was the witness who testified that the defendant was on the balcony, and she told him to turn himself in. There was no testimony that, well, I didn't do this. She asked him to turn himself in. She saw the gun.

Cannon contends that his trial counsel was ineffective because she failed to object to the State's reference to Cannon's failure to state, "well, I didn't do this." Cannon argues that this statement was an unauthorized comment on his failure to testify.

> "As a rule of both constitutional law and Georgia statutory law, a prosecutor may not make any comment upon a defendant's failure to testify at trial." [Cits.] Generally, comments made by the State regarding the defendant's decision not to testify may constitute reversible error if "(1) the prosecutor's manifest intention was to comment on the accused's failure to testify, or (2) the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify." [Cit.]

*Smith v. State*, 279 Ga. 48, 49 (2) (610 SE2d 26) (2005). Here, however, the State's manifest intention was not to comment on Cannon's silence to the police or failure to testify at trial, but to

comment on his failure to assert his innocence in response to a request by an acquaintance to turn himself in to the police. Thus, "[t]aken in context, the prosecutor's closing argument did not directly or naturally implicate the defendant's decision not to testify. . . . Rather, the prosecutor was simply making a reasonable inference based on [the previous testimony of Coons]." *Smith v. State*, supra at 50 (2). The State's remarks " 'were but a small part of a summary of the evidence best understood as conceding the ambiguities therein and were unlikely to be interpreted as comments on [Cannon's] failure to testify.' [Cit.]" *Lampley v. State*, 284 Ga. 37, 38 (2) (a) (663 SE2d 184) (2008). Since neither prong of the test above was implicated, the State's remarks did not constitute an improper comment on Cannon's failure to testify, and, thus, trial counsel did not provide deficient performance in failing to object to the remarks. See *Wellons v. State*, 266 Ga. 77, 85-86 (10) (463 SE2d 868) (1995); *Eason v. State*, 283 Ga. App. 574, 576-577 (3) (642 SE2d 207) (2007). Furthermore, considering the overwhelming evidence of guilt, including five independent eyewitnesses to the shooting, even if the comment by the State was improper, it would constitute harmless error and, thus, "there is no reasonable probability that the lawyer's failure to object to it affected the outcome of the case." *Pearson v. State*, 277 Ga. 813, 817 (5) (c) (596 SE2d 582) (2004). See also *Thomas v. State*, 284 Ga. 647, 649 (3) (a) (670 SE2d 421) (2008).

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 20, 2010 —
RECONSIDERATION DENIED NOVEMBER 22, 2010.

*Charles H. Frier, Kenneth D. Kondritzer*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.