S13A0402. RUCKER v. THE STATE.
(744 SE2d 36)

BENHAM, Justice.

Stephen LaBrellie Rucker filed this appeal from his conviction for the aggravated assault and felony murder of Jeremy Kidd.[1] Rucker asserts the trial court erred in failing to grant his motion for

---

[1] The crimes occurred on October 10, 2006. On December 13, 2006, Rucker was indicted by a Hart County grand jury and charged with one count of malice murder, one count of felony murder, and two counts of aggravated assault. A previous trial resulted in acquittal on the malice murder charge and a mistrial, due to the jury's inability to reach a verdict, on the felony murder charge as well as the aggravated assault charges with respect to Jeremy Kidd and Tiffany Rucker. At the second trial, which took place on August 25-29, 2008 and is the subject of this appeal, Rucker was acquitted of the aggravated assault charge with respect to Tiffany Rucker and convicted of felony murder and aggravated assault with respect to Kidd. On February 20, 2009 the trial court entered a sentencing order in which the conviction for

mistrial on the ground that the prosecutor improperly inserted his character into evidence and also erred in refusing to permit his trial counsel to impeach a prosecution witness with proof of a pending indictment against him to show the witness's bias. Rucker also requests that the case be remanded to the trial court for an evidentiary hearing on the issue of alleged ineffective assistance of trial counsel. For the reasons set forth below, we affirm the trial court.

Viewed in the light most favorable to the verdict, the evidence shows the victim died as a result of stab wounds sustained in a fight that occurred on the front porch of Rucker's sister's apartment. Several people were at the apartment at the time of the fight, and a significant amount of alcohol had been consumed over the course of the evening, although there was testimony that Rucker was not among those who were drinking. Rucker and the victim engaged in a physical struggle as a result of angry words. No witness testified that he or she saw who inflicted the wounds, though Rucker told his then-girlfriend he did it. Further, Rucker exclaimed to his girlfriend as he ordered her to get into her car and drive them away from the scene of the crime, "I done threw my life away." Both Rucker and another individual present at the time of the fight, Carlos Gray, were known to have had one or more knives in their possession at some point in the evening. Thus, Rucker's theory of defense was that it was not he but Gray who committed the crimes. Rucker testified at trial and admitted, however, that he owned the knife recovered from the bushes near the apartment on which the victim's blood was found, but he denied having the knife in his possession outside the apartment on the night in question. Gray testified he attempted to break up the fight, at which point a knife fell into his hands which he then dropped. Rucker exclaimed "Where's the knife? Where's the knife?" Rucker then grabbed the knife and ran around the side of the apartment.

Gray testified he also fled the premises and tossed away, at another location in the neighborhood where the fight occurred, a knife that had been in his possession. A knife matching that description was recovered in the neighborhood, but no blood was found on it. Gray testified he got rid of his knife because he did not want to be found in possession of a knife in violation of parole. Earlier in the

aggravated assault was merged with the felony murder conviction and Rucker was sentenced to a term of life imprisonment. Rucker filed a motion for new trial on September 8, 2008, which was heard and denied on March 17, 2009. Rucker moved for an out-of-time appeal on August 15, 2012, and the trial court granted his request on September 10, 2012. Rucker filed a timely notice of appeal on October 1, 2012, and the case was docketed to the January 2013 term of this Court. The case was orally argued on February 4, 2013.

evening Gray was seen in possession of a steak knife that was found at the apartment, but it, too, tested negative for the presence of blood.

Once officers arrived at the scene, a "be on the lookout" notice was issued for Rucker. Approximately one hour later Rucker and his girlfriend were spotted in her car, they were stopped, and he was arrested. By that time Rucker had tossed his bloody slacks into the woods on a rural road. Lab tests confirmed the presence of the victim's blood on the slacks recovered from the woods, on boots Rucker was wearing at the time he was arrested, and on other articles of Rucker's clothing found in the girlfriend's car.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, Rucker asserts the trial court erred in denying his motion for a mistrial brought on the ground that the prosecutor improperly injected his character into the trial as a result of the prosecutor's cross-examination of defense witness Terrence Johnson.

> A trial court's denial of a motion for mistrial based on the improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.

*Agee v. State*, 279 Ga. 774, 777 (4) (621 SE2d 434) (2005) (citations and punctuation omitted). We find no abuse of discretion in this case.

At trial, the prosecution presented the testimony of Rucker's former girlfriend, Brandi Warren, who testified, among other things, about Rucker's conduct after the fight, including the time she spent driving him to various locations before they were stopped by the police and Rucker was arrested. She explained that she transported Rucker in her car the night of the fight and did not attempt to flee his presence because she was "terrified" he would hurt her. On cross-examination, Ms. Warren admitted she regularly wrote to Rucker for a period of time while he was incarcerated and that in such letters she repeatedly stated she knew he did not commit the crime and professed her love for him. She explained, again, that she made these comments out of fear of retribution by Rucker or his associates, even though Rucker was incarcerated.

Rucker's trial counsel called Terrence Johnson as a witness to, among other things, impeach Ms. Warren's credibility. Mr. Johnson is Rucker's cousin and lived at the home of Rucker's grandmother. Mr. Johnson was home when Rucker and Ms. Warren visited that residence between the time they left the scene of the crime and Rucker's arrest. Mr. Johnson testified Ms. Warren did not appear upset or afraid nor did she say anything that would indicate she was being held captive. On cross-examination, the prosecutor established that Mr. Johnson knew Rucker and then asked, "Would you be surprised to hear that Ms. Warren thinks he's violent? Do you know him to be violent?" No objection to this question was raised. When Mr. Johnson answered in the negative, the prosecutor attempted to impeach this testimony by commencing to question Mr. Johnson about whether he had filed a police report attesting that Rucker had come after him with a sword and broken the windows of Mr. Johnson's car. The witness denied he had filed a police report but stated he had given testimony. When the prosecutor asked whether Mr. Johnson considered somebody who would come after him with a sword to be violent, the witness denied Rucker had come after him with a sword. The prosecutor then asked: "That's not what you said in your police report?"

At that point, Rucker's trial counsel objected on the ground that the police report is hearsay and cannot be placed into evidence. Outside the presence of the jury, defense counsel also objected on the ground the prosecution had improperly introduced Rucker's character into evidence and then moved for mistrial. Additionally, defense counsel objected on the ground that the credibility of the witness had been improperly impeached because the prosecutor created the impression to the jury that Mr. Johnson had lied about filing a police report when, in fact, the report was filed by the police, not Mr. Johnson. Defense counsel renewed the motion for mistrial upon both grounds and argued that curative instructions would not be sufficient to cure the damage. The trial court denied the motion for mistrial and gave curative instructions with respect to the testimony about an alleged incident between the witness and Rucker. The trial court also instructed the jury that, with respect to testimony about filing an incident report, the witness did not file one and this testimony, also, should not enter into their deliberations in the matter.

Asserting that the trial court's failure to grant a mistrial is reversible error because the prosecutor impermissibly placed his character into evidence in violation of former OCGA § 24-2-2, Rucker asserts his trial counsel did not open the door for questioning Mr. Johnson about Rucker's general character or propensity for violent behavior. Rucker also argues the witness's testimony that he did not

know Rucker to be violent did not open the door for the prosecutor to cross-examine the witness about specific instances illustrating bad character. Instead, Rucker asserts, the initial question regarding whether the witness knew Rucker to be violent constituted an improper goading or tricking of the witness into testifying to matters relating to character so the prosecutor could then claim the follow-up question about a specific instance reflecting bad character was justified as impeachment. These arguments lack merit.

First, we note that Rucker's character and propensity for violent behavior had already been placed into evidence by Ms. Warren's testimony on cross-examination by Rucker's trial counsel. Ms. Warren explained that, even though the arresting officer testified she did not appear to be under duress at the time she and Rucker were stopped, she was "scared to death" of Rucker because he had previously beaten her. She testified she did not attempt to escape because she knew what Rucker was capable of and feared that if she tried something he would hit her. She further testified she had called the police about his hitting her several times and that even though she had tried to leave him several times in the past he had restrained her, beat her and held a knife to her. Even if this testimony about Rucker's alleged propensity for violence had been presented by the prosecutor, it would not have been inadmissible as placing Rucker's character in issue because it explained the witness's prior behavior and statements that were inconsistent with her testimony against Rucker. Compare *Cannon v. State*, 288 Ga. 225 (4) (702 SE2d 845) (2010) (testimony that the witness was afraid of the defendant and his friends was admissible because it was relevant to explain why she denied witnessing the crime even though she previously stated to the police and others that she had). Rucker cannot now assert it was reversible error for the trial court to deny his motion for a mistrial as a result of the prosecutor's line of questioning and alleged prosecutorial misconduct because testimony relating to Rucker's general character for violence had already been introduced into evidence by his trial counsel, presumably as a trial strategy to impeach Ms. Warren's credibility.

Moreover, even if we were to find error in this regard, given the substantial evidence of guilt in this case, the nature of the statement at issue, and the fact that evidence had already been admitted relating to Rucker's character and propensity for violence, this Court finds no abuse of discretion by the trial court's denial of Rucker's motion for mistrial with respect to the prosecutor's questions relating to Rucker's propensity for violence. See *Ellington v. State*, 292 Ga. 109 (10) (e) (735 SE2d 736) (2012); *McBee v. State*, 228 Ga. App. 16 (2) (491 SE2d 97) (1997). With respect to the motion for mistrial on the ground

that the reference to the witness having filed a police report created a false impression that the witness had lied, we deem the curative instructions to be sufficient to correct any error. See *Cannon*, supra, 288 Ga. at 227 (3) (the State's improper attempt to impeach a defense witness did not require mistrial where, as here, the witness was not crucial to the defense as he was not an eyewitness to the crime and the trial court instructed the jury to disregard the improper question and strike it from consideration). Under the circumstances present in this case, the Court finds no reversible error as a result of the trial court's denial of Rucker's motion for a mistrial.

3. At the previous trial of this case, the trial court ruled that Rucker's trial counsel was prohibited from introducing proof of pending criminal charges against Mr. Gray which counsel attempted to introduce in order to impeach his credibility, show bias, and demonstrate motive for his cooperation as a prosecution witness against Rucker. In her opening statement in the second trial that forms the basis for this appeal, Rucker's trial counsel referenced witness Carlos Gray and told the jury she intended to impeach him with evidence of a criminal conviction and also with evidence that he had been involved in seven additional incidents resulting in new charges of selling drugs. At the close of opening statements, the prosecutor moved for a mistrial on the ground that the court had previously ruled evidence of Gray's pending indictment to be inadmissible, that he assumed the ruling would be applied in the second trial, and that the jury had now been tainted by hearing about these drug charges. The trial court denied the motion without comment. Mr. Gray testified as a prosecution witness and, on cross-examination, Rucker's trial counsel did not attempt to question Mr. Gray about the pending charges or to seek a ruling from the trial court regarding Rucker's right to impeach the witness with such evidence. Although Rucker states that the trial court appeared to stand behind its original ruling on the admissibility of evidence relating to the pending charges, the record reflects no such indication. Nevertheless, Rucker asserts the trial court erred by refusing to permit Rucker's trial counsel to impeach Mr. Gray with this evidence.

Trial counsel did not seek to introduce evidence of Mr. Gray's pending indictment and failed to raise any issue of Mr. Gray's bias or motive to testify against Rucker arising out of any pending charges. Even if Rucker should have been permitted to cross-examine Mr. Gray about his pending charges, the error was not preserved. See *Isaac v. State*, 269 Ga. 875, 876 (2) (505 SE2d 480) (1998) (where, as here, the defendant made no effort to cross-examine a witness about an arrest "even though the trial court left the door open to do so" when, after granting the prosecutor's motion in limine regarding

such evidence, the trial court nevertheless told counsel to " 'let the court know about it before [attempting to question the witness about the arrest]' "). Rucker cannot raise for the first time on appeal that he was wrongly precluded from presenting such evidence. See *Boatman v. State*, 272 Ga. 139 (5) (527 SE2d 560) (2000) (with respect to appellant's assertion that the trial court erred in not allowing him to introduce evidence that he contended was admissible to impeach a prosecution witness for bias, the appellant was procedurally barred from raising the issue of bias on appeal when he failed to raise it at trial).

4. Rucker's appointed trial counsel filed a motion for new trial and, after the motion was denied, a motion for reconsideration, which was also denied. Afterward, the trial court appointed appellate counsel and ultimately Rucker's current appellate counsel entered the case by substitution of counsel. Appellate counsel then filed the motion for out-of-time appeal, which was granted. No motion for new trial was filed before Rucker filed this appeal. Because Rucker failed to file a motion for new trial after being granted an out-of-time appeal, he is procedurally barred from pursuing an ineffective assistance of counsel claim.

> After an out-of-time appeal has been granted, a defendant's new appellate counsel must file a motion for new trial, in which an ineffective assistance of counsel claim is raised, in order to assert an ineffectiveness claim on appeal. *Maddox v. State*, 278 Ga. 823, 827 (5) (607 SE2d 587) (2005); *Chatman v. State*, 265 Ga. 177, 178 (2) (453 SE2d 694) (1995). [Appellant's] failure to file a motion for new trial raising the claim of ineffective assistance of trial counsel bars review of that claim in this court.

*Moore v. State*, 280 Ga. 766, 767 (4) (632 SE2d 632) (2006). This is true even when, as here, a previous motion for new trial was filed and denied prior to the grant of an out-of-time appeal. See *Maddox*, 278 Ga. at 826 (5).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 3, 2013.

*Arianne E. Mathé*, for appellant.

*D. Parks White, District Attorney, James A. Carmichael, Leon Jourolmon, Assistant District Attorneys, Samuel S. Olens, Attorney*

*General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General*, for appellee.