**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 4, 2014**

# In the Court of Appeals of Georgia

A14A1009. REEVES v. THE STATE.

PHIPPS, Chief Judge.

After a jury trial in May 2011, Tyrone Reeves was found guilty of burglary,[1] theft by receiving stolen property (felony),[2] theft by receiving stolen property (misdemeanor),[3] and obstruction of an officer.[4] He appeals his convictions, contending that the evidence was insufficient and that he received ineffective

---

[1] OCGA § 16-7-1 (2010).

[2] OCGA §§ 16-8-7, 16-8-12 (a) (1) (2010) . The crimes in this case were committed in 2010. See *Mangrum v. State*, 285 Ga. 676, 681 (7) (681 SE2d 130) (2009), citing *Fleming v. State*, 271 Ga. 587, 590 (523 SE2d 315) (1999) ("it has long been the law in this state that, in general, a crime is to be construed and punished according to the provisions of the law existing at the time of its commission.").

[3] OCGA § § 16-8-7, 16-8-12 (a) (2010).

[4] OCGA § 16-10-24 (a).

assistance of trial counsel. For the following reasons, we affirm Reeves's convictions except with regard to the misdemeanor theft by receiving count.[5]

> 1. On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and [Reeves] no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[6]

Viewed in this manner, the evidence showed the following. On May 19, 2010, around "lunch time" on a weekday, Stephanie Evans was in her ground floor apartment of Building 3200 of an apartment complex, when she awakened to a sound of banging on her doors and windows. Evans saw a man walking around the building, banging on doors and windows of other apartments. The man then hopped the railing

---

[5] The jury did not reach a verdict as to three counts of burglary involving other residences.

[6] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), *Wilson v. State*, 227 Ga. App. 59, 60 (1) (488 SE2d 121) (1997) (citation and punctuation omitted); see *Green v. State*, 277 Ga. App. 867 (1) (627 SE2d 914) (2006) ("In reviewing a challenge to the sufficiency of the evidence, we do not weigh the evidence or resolve issues of witness credibility. We merely determine whether the evidence, construed favorably to the verdict, authorized the jury to find the defendant guilty beyond a reasonable doubt.") (footnotes omitted).

of Evans's apartment and pulled himself up to the balcony above her apartment. Evans heard what she described as "a loud shatter," and she called 911.

Evans gave a physical description of the man that she had seen to the 911 operator. Police arrived at the apartment complex while Evans was still on the phone with the 911 operator, and parked near Building 3100. A uniformed officer spotted an individual fitting the description Evans had given to the 911 operator; the individual was running away from Building 3200. The officer commanded the individual to stop, but he did not. A foot chase ensued, and the individual, later identified as Reeves, was apprehended. Reeves was carrying a backpack which contained a computer, a yellow glove, a flathead screwdriver, a hammer, cash, and car keys; broken pieces of glass were in the backpack's side mesh pocket. Evans identified on the scene the man police had apprehended as the individual she had seen climbing up her railing to the apartment balcony above hers.

Reeves was read his *Miranda* rights; he waived them and indicated that he wanted to talk with police. Tara Davis resided in the apartment above Evans's apartment. Reeves told police that he had been dropped off by some "associates" to break into Davis's apartment to steal drugs. Police observed that the sliding glass balcony door to Davis's apartment had been broken and the front door was ajar. Davis

was on her way to school when the police called her and asked her to come to her apartment. Davis told police that her laptop computer was missing from the apartment. Davis testified that she did not know Reeves and that there was no reason that anyone should have had her laptop. Davis identified as hers the laptop computer the police had recovered from Reeves's backpack.

The keys in Reeves's backpack unlocked the doors to a vehicle police later discovered belonged to Reeves's girlfriend; the vehicle was located in a parking lot of Davis's apartment complex the day Davis's apartment was burglarized. A police officer looked inside the vehicle through the windows and observed "what appeared to be, a couple of laptops or electronic-type devices, laptop-type devices and a yellow glove which was similar to one that [the officer] saw back at the precinct that came from the backpack that was inventoried at the precinct." Police towed the vehicle to the precinct, searched it, and seized and inventoried the items found therein.

Police went to the apartment of Reeves's girlfriend (at a complex different from Davis's) and obtained consent to search her apartment. She testified that Reeves had moved into her apartment in March 2010. She showed police items in her apartment that she said Reeves had told her he had brought from his house. The items included, among other things, four flat-screen televisions, two laptop computers and jewelry.

4

The police seized the items. Reeves's girlfriend also testified that typically, every day, Reeves drove her vehicle and dropped her off at work, and that he had done so on the day Davis's apartment had been burglarized. Reeves's girlfriend testified that none of the items police recovered in her vehicle were in the vehicle when Reeves had dropped her off at work that morning.

Heidi Santiago testified that her apartment (also at a complex different from Davis's) had been burglarized in March 2010. She was shown photographs of items Reeves had stored at his girlfriend's apartment, and she identified several items as her property that was stolen when her apartment was burglarized, including a computer, car keys, an i-Pod, a cell phone, and a camcorder. She estimated the value of her items depicted in the photo at four to five thousand dollars. Prior to trial, she had retrieved some of her belongings from police.

Reeves was convicted of burglary, for entering Davis's apartment without authority and with the intent to commit a theft therein; obstruction of a law enforcement officer for running from a law enforcement officer after being given a lawful command to stop running; theft by receiving stolen property (felony), for receiving and retaining certain stolen property with a value of more than $500 (belonging to Santiago); and theft by receiving stolen property (misdemeanor) for

5

receiving and retaining certain stolen property with a value of less than $500, belonging to Betty McEntire, who did not testify at trial.

1. With regard to the burglary conviction, we find unavailing Reeves's contention that the evidence was insufficient because the state failed to show that he had entered Davis's apartment without authority when Davis did not testify that Reeves had no authority to be in her apartment. Reeves confessed to police that he had broken into the apartment to steal; he broke Davis's sliding glass door to gain entry into Davis's apartment; Davis testified that she did not know Reeves; and Reeves fled from police when they arrived on the scene. Therefore, there was evidence from which a trier of fact could have concluded beyond a reasonable doubt that Reeves lacked the authority to enter Davis's apartment.[7]

2. Without stating any specific basis therefor, Reeves contends that the evidence was insufficient to "convict [him] of . . . theft by receiving stolen property."

---

[7] See *Jones v. State*, 258 Ga. 25-27 (1) (365 SE2d 263) (1988) ("while there is no direct evidence on this issue, there is circumstantial evidence from which the jury could have found beyond a reasonable doubt that appellant lacked the authority to enter the victim's home"); *Harris v. State*, 322 Ga. App. 122, 124 (1) (744 SE2d 111) (2013).

(a) Although not challenged, we find that "[a] rational trier of fact could have found from the evidence that [Reeves] committed the crime of obstruction of an officer."[8]

(b) The evidence was also sufficient to support Reeves's conviction for (felony) theft by receiving stolen property (involving Santiago's property), as the evidence showed more than possession of Santiago's belongings;[9] Reeves possessed items that had been stolen from other individuals. Although the jury reached no verdict as to Reeves's guilt or innocence of three burglary counts, evidence was presented to the jury identifying certain items recovered from Reeves's girlfriend's vehicle as items which had been stolen from the residences of the burglary victims.[10]

---

[8] *Clowers v. State*, 324 Ga. App. 264, 267 (2) (b) (750 SE2d 169) (2013) (punctuation and footnote omitted).

[9] *Wells v. State*, 268 Ga. App. 62, 62-63 (1) (601 SE2d 433) (2004) (citations and punctuation omitted) ("Proof of possession, alone, of recently stolen property is not sufficient to establish the essential element of the offense of theft by receiving stolen property that the possessor knew or should have known that the property was stolen. But knowledge sufficient to establish guilt may be inferred from possession in conjunction with other evidence of knowledge, and such guilty knowledge may be inferred from circumstances which would excite suspicion in the mind of an ordinary prudent man.").

[10] We do not imply that Reeves was guilty of any crime in connection with the burglary counts on which the jury did not reach a verdict.

Reeves had driven the vehicle the day Davis's apartment was burglarized; the vehicle was located in Davis's apartment complex the day Davis's apartment was burglarized; and the contents of the vehicle led police to search Reeves's girlfriend's apartment where police recovered Santiago's belongings. Moreover, the circumstances of Reeves's arrest were that he was seen running from the direction of an apartment building where a burglary had been reported, he attempted to avoid police detection by fleeing from police, and he was carrying a laptop that had been stolen from the apartment that had been burglarized.[11]

3. Reeves was also convicted of theft by receiving stolen property (misdemeanor), in that he did on and about May 19, 2010, receive and retain stolen property, to wit: a secure digital "SD" memory card, belonging to Betty McEntire. The evidence was not sufficient, however, to sustain Reeves's conviction for this count.

A police officer testified that he was able to determine that a memory card found at the apartment of Reeves's girlfriend was one which had been previously reported stolen by McEntire. McEntire did not testify at trial. Thus, there being no

---

[11] See generally *Reese v. State*, 313 Ga. App. 746-747 (1) (a) (722 SE2d 441) (2012).

8

competent evidence to show that the memory card had been stolen – only that it had been reported stolen – Reeves's conviction on this count cannot stand.[12]

4. Reeves contends that his trial counsel provided ineffective assistance "for failing to object to the state's comments regarding [him] not testifying, commenting on what appellant might have done and interjecting the jurors into the place of the victim."

> Under *Strickland v. Washington*,[13] to prevail on a claim of ineffective assistance of trial counsel, [Reeves] bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. In order to establish prejudice, a defendant must show a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. When reviewing an

---

[12] See *Smith v. State*, 283 Ga. App. 317-319 (641 SE2d 296) (2007) (there was no admissible evidence in this case to establish that the compressor had been stolen; although police officer testified that he was responding to a stolen property call and that the alleged victims reported that an air compressor had been stolen from a van, the officer's hearsay testimony was not competent to show that the air compressor had been stolen); *Lopez v. State*, 259 Ga. App. 720, 722 (2) (578 SE2d 304) (2003) ("There must be proof of a larcenous taking to authorize a conviction for theft by receiving stolen property. If the goods found in the possession of the defendant are not shown to be that which [have] in fact been stolen, proof of larcenous taking is absent."; officer's testimony that radio dispatch identified pistol as stolen was nonprobative hearsay) (citation and punctuation omitted).

[13] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

ineffective assistance claim, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[14]

(a) *Comment regarding Reeves's failure to testify.* Reeves contends that the state improperly commented on his failure to testify when the prosecutor, in closing argument, "asked the rhetorical question of" whether he (Reeves) had "any good explanation why he had that stuff?" Under the circumstances present in this case, we find no error.

> As a rule of both constitutional law and Georgia statutory law, a prosecutor may not make any comment upon a defendant's failure to testify at trial. Generally, comments made by the State regarding the defendant's decision not to testify may constitute reversible error if (1) the prosecutor's manifest intention was to comment on the accused's failure to testify, or (2) the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify.[15]

During the opening segment of the state's closing argument, the prosecutor stated:

---

[14] *Cannon v. State*, 288 Ga. 225, 229 (6) (702 SE2d 845) (2010) (citations and punctuation omitted).

[15] Id. at 230 (6) (c) (citation and punctuation omitted).

10

Well count six is the Blackberry phone, Cannon camcorder and I-Mac desktop which belonged to Heidi Santiago. . . . She saw her stuff and she told you what the value was. Well in excess of $500. And you know who had that stuff? Tyrone Reeves. Does he have any good explanation why he had that stuff? It's there with all the other stolen stuff. . . . It was there at the apartment.

Immediately after he was arrested, Reeves waived his Miranda rights and told police that he had been dropped off at the apartment complex to break into Davis's apartment to steal drugs; what the police found in Reeves's backpack instead, however, was Davis's laptop and car keys, and police ultimately discovered – in the vehicle Reeves had been driving and in the apartment where he lived – a variety of items that had been stolen in prior burglaries. Therefore, "[t]he [prosecutor's] argument, in context, specifically referred to matters actually in evidence and made no reference to [Reeves's] decision not to testify."[16] As the prosecutor's statement did not improperly comment on Reeves's failure to testify, Reeves's trial counsel did not provide deficient performance in failing to object to the statement.[17]

---

[16] *Ledford v. State*, 289 Ga. 70, 88 (22) (d) (709 SE2d 239) (2011); see *Cannon*, supra at 230-231 (6) (c); *Kirkland v. State*, 315 Ga. App. 143, 147-148 (5) (726 SE2d 644) (2012).

[17] *Cannon*, supra.

11

(b) *Commenting on what Reeves might have done.* Reeves contends that the prosecutor "improperly placed his character into evidence by commenting on what he 'might' have done," when as to the theft by receiving stolen property charge of the indictment in connection with McEntire, the prosecutor remarked (in his closing argument) that Reeves was "not being accused of breaking into Ms. McEntire's house. He might very well have done it but that's not what he is being accused of here today."

At the motion for new trial hearing, Reeves challenged those remarks on the basis that they were improper because "[n]one of these facts were in evidence."[18] In its written order denying the motion for new trial, the trial court found that the prosecutor was simply "trying to explain to the jury why some charges regarding the other stolen property found were burglary," and others were theft by receiving stolen property. Thereafter, the trial court ruled that the remark "was not an improper argument by the State, but a legal argument concerning the counts in the indictment." As the (character) basis for objection Reeves asserts on appeal was not the same

---

[18] *Blige v. State*, 263 Ga. 244, 245 (2) (430 SE2d 761) (1993) (citation omitted) ("It is a basic tenet of trial procedure that counsel cannot argue facts not in evidence.").

12

(facts-not-in-evidence) basis either asserted by Reeves in the trial court, or ruled upon by the trial court, there is nothing for us to review.[19]

(c) *Impermissible "golden rule" argument.* Reeves contends that the state improperly "interject[ed] the jurors into the place of the victims during the State's opening closing argument," by remarking of the "horror of finding your home has been broken into."

> A "golden rule" argument is one which, either directly or by implication, tells the jurors that . . . they should put themselves in the injured person's place and render such a verdict as they would wish to receive were they in the (injured person's) position. Such an argument is impermissible because it encourages the jurors to depart from neutrality

---

[19] *Moore v. State*, 279 Ga. 45, 47-48 (8) (609 SE2d 340) (2005) (claims of trial counsel's ineffectiveness as to matters not asserted in the trial court as ineffective were waived for purposes of appeal); *Dillard v. State*, 272 Ga. App. 523, 526 (2) (612 SE2d 804) (2005) ("Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court.") (citation and punctuation omitted); *Guertin v. State*, 243 Ga. App. 322, 325 (2) (533 SE2d 159) (2000) ("None of these contentions were raised at the motion for new trial as a basis for [defendant's] ineffective assistance of counsel claim, and consequently, they were not ruled upon by the trial court. Accordingly, we will not consider them for the first time on appeal.") (citation omitted).

and to decide the case on the basis of personal interest and bias rather than on the evidence.[20]

During the opening segment of the state's closing argument, the prosecutor stated:

Now you heard from all of the victims this morning. And they came in and they testified about how they left their house, and when they came back and they had that horror of finding your home has been broken into. And they described that each of them had the same MO, the modus operandi, the same exact way. Somebody broke some glass in the back and went into the apartment.

The prosecutor's closing remarks did not constitute a prohibited "golden rule" argument because he did not ask the jurors to place themselves in the victims' shoes. The record shows that the "your" in the challenged remark referred to the victims and their reactions in finding that their homes had been (allegedly) burglarized, not to the jurors.[21] "Because the State's argument did not ask jurors to place themselves in the

---

[20] *Jackson v. State*, 282 Ga. 494, 499 (5) (651 SE2d 702) (2007) (punctuation and footnotes omitted).

[21] See generally *McKibbins v. State*, 293 Ga. 843, 849-850 (3) (b) (750 SE2d 314) (2013); *Smith v. State*, 294 Ga. App. 692, 707-708 (10) (i) (i) (670 SE2d 191) (2008); *Johnson v. State*, 263 Ga. App. 443, 449-450 (3) (c) (587 SE2d 775) (2003).

victims' position, it was not a 'golden rule' argument and trial counsel was not ineffective for failing to object."[22]

*Judgment affirmed in part and reversed in part. Ellington, P. J., and McMillian, J., concur.*

---

[22] *Martin v. State*, 294 Ga. App. 117, 122 (3) (668 SE2d 549) (2008) (citation and punctuation omitted).