**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 26, 2023**

# In the Court of Appeals of Georgia

A23A1113. WEST v. THE STATE.

FULLER, Senior Judge.

Following the denial of his motion for new trial, Demarcus West appeals his convictions of aggravated sodomy and other crimes. West contends that he received ineffective assistance of trial counsel because his lawyer failed to object when the prosecutor, in closing argument, (a) expressed his opinion about the veracity of the victim and (b) improperly commented on his role as a prosecutor. We disagree and affirm.

Viewed in the light most favorable to the jury verdict,[1] the record shows that the victim and her son lived on the third floor of an apartment building. One morning

---

[1] "On appeal from a criminal conviction, the defendant is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict." *Johnson v. State*, 304 Ga. 610, 612 (1) (b) (820 SE2d 690) (2018).

in October 2016, the victim got her son ready for school and took him down to the sidewalk to meet his friends to walk to school. The victim left her apartment door unlocked and was gone for about three minutes. When she returned, she saw the light in her bathroom turn off, and she went to investigate.

The victim pushed on the bathroom door but could not open it because there was a man behind it. She saw the man in the bathroom mirror, did not recognize him, and tried to run, but the man grabbed her from behind, choked her, and dragged her by her hair into the living room. There, he ripped off her shorts and flipped her shirt over her head so that she could not breathe. The man then removed her shirt, leaving her naked. He asked her if she had "ever been f--ked in [her] ass," punched her face repeatedly, and kicked her until she began to lose consciousness. He put his hand on her vagina, stuck his fingers in her mouth, and licked her breast. Then he pinned her on the floor and put his penis in her mouth. The victim fought back by punching the man in the face, and he jumped off of her and ran out the front door.

Still naked, the victim crawled to her balcony, where she screamed for help and tried to jump over, afraid that the man would return and kill her. Two neighbors and a retired police officer who was in the area heard the victim's screams, came to help, and called 911. They described the victim as "really scared," "shak[en] up," and

crying uncontrollably. The victim was taken to the hospital, where medical personnel completed a sexual assault kit and noted scratches on her thigh, abrasions on her face and both knees, swelling on her lip, and scratches and bruises on her arm. A nurse testified that these injuries were consistent with the victim's account of events. Swabs taken from the victim's body were later submitted for forensic testing, which showed the presence of seminal fluid in the victim's mouth[2] and West's DNA on her breast.

Inside the victim's apartment, "things [were] lying around the floor like they had been knocked over," and "ripped" pieces of the victim's shorts were strewn "all over." The victim's shirt was missing, but surveillance footage from the apartment building showed a man walking away from the complex at the time of the incident with a shirt slung over his shoulder that matched the description of the victim's shirt. Based on the victim's description of her attacker and the services of a forensic sketch artist, police compiled photographic line-ups of potential suspects, and the victim identified West as her attacker.

West was charged with aggravated sodomy, attempted rape, sexual battery, burglary, and aggravated assault by strangulation. The case proceeded to trial, where

---

[2] Because this seminal fluid did not contain sperm cells, it was not tested for DNA.

3

the victim again identified West as her attacker. West elected not to testify and presented no evidence in his defense. In closing argument, his attorney maintained that the victim's account was not credible, while the prosecutor countered that it was. The jury found West guilty of all charges. He filed a motion for new trial, raising claims of ineffective assistance of trial counsel. The trial court denied the motion, and this appeal followed.

West argues that he received ineffective assistance of trial counsel because his lawyer did not object to the prosecutor's comments in closing argument about the credibility of the victim and his prosecutorial role. We find no ineffective assistance.

To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his trial attorney's performance was deficient and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Deficient performance requires a showing that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Prejudice requires demonstrating "a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different." *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015). "If either *Strickland* prong is not met, [a reviewing court] need not

4

examine the other prong." *Walker v. State*, 312 Ga. 232, 239 (4) (862 SE2d 285) (2021) (citation and punctuation omitted).

(a) In his closing argument, the prosecutor told the jury, "[The victim]'s been honest with us and she's been honest with the police." Later, the prosecutor said, "Why do we believe [the victim]? Because we have every reason to and no reason not to. She has no reason to lie." Defense counsel did not object to these statements. West argues that counsel's failure to object amounted to ineffective assistance, but we do not agree.

At the hearing on West's motion for new trial, defense counsel explained that a key focus of his trial strategy was to cast doubt on the victim's credibility. Counsel testified that, because he "went on for about a half an hour commenting on [the victim's] v[e]racity" in his own closing argument, he considered that topic to be "fair game" and thus found nothing wrong with the prosecutor's comments. Counsel elaborated: "I think closing argument is built for that sort of thing. That's how I argue; that's how [the prosecutor] argues."

"Closing arguments are judged in the context in which they are made." *Pitts v. State*, 323 Ga. App. 770, 774 (3) (747 SE2d 699) (2013) (citation and punctuation omitted). "A prosecutor is granted wide latitude in the conduct of closing argument,

5

the bounds of which are in the trial court's discretion. Within that wide latitude, a prosecutor may comment upon and draw deductions from the evidence presented to the jury." *Arnold v. State*, 309 Ga. 573, 577 (2) (a) (847 SE2d 358) (2020) (citation and punctuation omitted). "While it is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness[,] it is not improper for counsel to urge the jury to draw such a conclusion from the evidence." *Jones v. State*, 361 Ga. App. 839, 842 (2) (b) (865 SE2d 836) (2021) (citation and punctuation omitted); see also *Moody v. State*, 273 Ga. 24, 27 (4) (537 SE2d 666) (2000) (prosecutor may properly "urge[ ] the jury to make a deduction about veracity from the facts").

Here, the prosecutor did not say that he personally believed the victim was being truthful. Instead, considered in the full context of his closing argument, the prosecutor urged the jury to find that the victim was credible based on the evidence, including the consistency of her accounts to hospital personnel, law enforcement, and the jury; her willingness to jump from a third-story balcony to escape her attacker; her physical injuries; the presence of West's DNA on her body; and her lack of a motive to lie. Further, the prosecutor made his comments in response to West's main trial defense — that the victim's account was not believable. Under these circumstances,

6

the comments in question were permissible. See *Moody*, 273 Ga. at 27 (4); *Jones*, 361 Ga. App. at 842 (2) (b). See also *Johnson v. State*, 271 Ga. 375, 384 (15) (b) (519 SE2d 221) (1999) (finding no error where "[t]he State's argument that 'no witnesses lied' was in response to defense counsel's claim . . . that State witnesses had lied, and the comment did not constitute the prosecutor's personal opinion regarding the veracity of the witnesses"). Because the prosecutor's comments were not improper, defense counsel did not render deficient performance by failing to object to them. See *Gaston v. State*, 307 Ga. 634, 640 (2) (b) (837 SE2d 808) (2020).

Even if defense counsel's failure to object had amounted to deficient performance, West cannot show prejudice for two reasons. First, both the prosecutor and the trial court told the jurors that determining the credibility of witnesses was their responsibility. Second, the evidence against West was overwhelming. As the prosecutor noted in his closing argument, the victim gave consistent accounts of the attack to multiple people and later identified West as her attacker; her neighbors and a police officer in the vicinity heard her screams and saw her torn clothing; surveillance footage from the apartment complex showed a man leaving the complex with what appeared to be the victim's shirt; the victim had physical injuries consistent with her account of the attack; and West's DNA was found on her body. Under these

7

circumstances, West cannot show prejudice. See *Lofton v. State*, 309 Ga. 349, 366 (6) (b) (iv) (846 SE2d 57) (2020) (finding no prejudice "[g]iven the trial court's [jury] instructions and the strong evidence of Appellant's guilt").

(b) West also contends that his trial counsel rendered deficient performance by failing to object to this comment that the prosecutor made about his role in the judicial system:

> And the reason why there ha[ve] been numerous defenses presented is because [West] knows I'm comfortable. This is my city that I have sworn an oath to protect and he knows I'm comfortable. And when they see me coming, they start running. But I always catch them. And when I catch them, I take them down for each and every one of you to see so that one of you will have the privilege of standing up and proclaiming that man guilty five times over.

> You see, when he went into that apartment, that was his arena because as I'm sure some of you are aware, sexual assault happens in seclusion. And he knew that because he had watched her leave and he knew no one else was present. That was his arena. He was a predator and [the victim] was a prey.

> This is my arena. I'm the predator. He's the prey. I'm coming for you.

8

West argues that these remarks "were inappropriate and meant only to aggrandize the State and make personal comments about [West]." He also argues that the comments were "inflammatory and argued facts not in evidence" and "implied that if [West] was not guilty the State would not be [at trial] arguing the case." Finally, West contends that the prosecutor "sat in the witness box while making these totally inappropriate comments," thereby "add[ing] weight to the[ir] truth." Again, we find no ineffective assistance.

In analyzing whether defense counsel's failure to object to potentially improper argument by the prosecutor constituted deficient performance,[3] our task is "to determine whether, in the throes of the closing argument, no reasonable attorney, listening to the inflection of the speaker's voice and judging the juror's reactions, would choose to remain silent instead of objecting and calling attention to the improper argument." *Braithwaite v. State*, 275 Ga. 884, 886 (2) (b) (572 SE2d 612)

___

[3] Citing *Nguyen v. State*, 296 Ga. App. 853 (676 SE2d 246) (2009), the trial court found that the prosecutor's comments were not improper. In *Nguyen*, the prosecutor referred in closing to "the TV show *To Catch a Predator*" and called the defendant a predator. Id. at 858-859 (2) (b). We found that these comments were allowable because they were "derived from evidence properly before the jury" and that defense counsel's failure to object was not ineffective assistance. Id. at 859 (2) (b) (citation and punctuation omitted). In light of our conclusion that West's trial attorney's failure to object was a reasonable strategic decision that did not prejudice West, we need not decide whether the comments in question were improper.

9

(2002). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." *Pitts*, 323 Ga. App. at 775 (3) (citation and punctuation omitted). Thus, when counsel articulates a strategic reason for not objecting, "we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Maurer v. State*, 320 Ga. App. 585, 593 (6) (e) (740 SE2d 318) (2013) (citation and punctuation omitted).

At the hearing on West's motion for new trial, defense counsel testified that he felt "[t]he whole predator, prey thing was . . . kind of funny," "very dramatic," and "silly." Counsel "didn't think it was very effective." He considered objecting, but decided that an objection "might have made it more effective" and "might have made it look like [he] was trying to shut [the prosecutor] down, which . . . does not work with the jury." Because this strategy was not patently unreasonable, "we will not use hindsight to judge" it. *Braithwaite*, 275 Ga. at 885 (2) (b). See *Smith v. State*, 288 Ga. 348, 356 (10) (b) (703 SE2d 629) (2010) (finding no ineffective assistance in the failure to object to the prosecutor's closing argument because it was "reasonable for [defense counsel] to pursue a strategy that would allow the potentially inappropriate

10

antics of the prosecutor to backfire against her"). Further, as explained above, even if counsel's failure to object constituted deficient performance, West cannot show prejudice in light of the overwhelming evidence of his guilt.

(c) West urges us to apply the cumulative error rule here, but "[o]ur rulings above that [West] has not established any instances of deficient performance . . . render it unnecessary to address his cumulative-error claim." *Bell v. State*, 366 Ga. App. 743, 749 (3) (f) (884 SE2d 129) (2023) (citation and punctuation omitted).

For these reasons, West's claim of ineffective assistance of counsel fails, and the trial court did not err by denying his motion for new trial.[4]

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*

---

[4] For the first time on appeal, West complains about another comment by the prosecutor: "[I]t's my job as a prosecutor to make sure that I speak the truth. And when I come before you, I better make sure I know what that truth is. And the truth is obvious in this case." However, as West did not challenge this comment in the trial court, we will not consider it for the first time on appeal. See *Reeves v. State*, 329 Ga. App. 470, 476 (4) (b) (765 SE2d 407) (2014) (finding "nothing for us to review" where the defendant made a different ineffective assistance argument on appeal than the one he made in the trial court).